974 F.2d 391
 16 Employee Benefits Cas. 1667
 George W. HENGLEIN, L.C. Albacker, R.B. Andrews, R.L.
Appeldorn, R.H. Ashenbaugh, A.L. Austin, J.W. Bagosi, J.D.
Balser, A. Barrasso, J.O. Bauer, E.E. Best, H.W. Bigleman,
C.R. Blazier, J.P. Bressanelli, G.D. Brown, F.C. Buchholz,
E.C. Calvin, R.R. Campbell, P.D. Castellano, J.L. Cerasi, E.
Chapman, S. Christy, T.M. Costello, C.A. Dauka, A.J.
Decosta, M.G. Degrande, A.S. Diccio, A.P. Dimarzio, C.J.
Dimarzio, R.J. Dougherty, M. Druga, E.P. Erath, E.P.
Fahnert, H. Farrington, M. Ferlaino, R.D. Feydo, E.R.
Finger, J.N. Flara, N.E. Frederick, J.P. Frenn, R.E. Fronko,
L.L. Gibbs, W.L. Gleason, L.E. Gordon, R.W. Gott, J.E.
Grimm, P.E. Grubbs, E.R. Guerra, A.J. Gulutz, J.T. Haaf,
J.D. Hamacher, Jr., P.J. Hannon, R.M. Hansen, M.I. Harpham,
D.H. Heldman, J.K. Hile, R.S. Hogsett, R.T. Hopper, H.M.
Howell, W.M. Hyams, J.M. Janke, C.L. Jobe, Jr., K.H. Johns,
R.O. Johnson, Jr., E.T. Jones, R. Kao, D.P. Kerr, Jr., P.A.
Keys, R.W. Knallay, E.E. Knapek, W.J. Kofalt, S.W. Kohler,
T. Kominitsky, T.R. Krupa, P.R. Kullen, J.R. Kundick, W.
Lake, D.F. Lavene, T.T. Lehmann, R.H. Lewis, R.A. Lippert,
W.R. Livingston, J.H. Lutton, A.J. Lynn, D.B. McClain, J.L.
McKain, P.F. McNicol, E.L. Marsh, F.S. Matsukas, H.J.
Mercer, A.R. Middleton, M. Mitrovich, M.A. Molchan, R.A.
Montgomery, R.T. Morelli, A.N. Morrison, H. Mraunac, M.R.
Muckian, C.W. Murray, III, C.J. Muers, L.V. Nagle, D.A.
Nobers, J.A. Nuzo, E. Ordich, W.H. Orr, T.H. Parsons, A.J.
Pasko, Jr., H.S. Pease, III, G.J. Pescion, G.V. Peterson,
J.J. Popp, G.P. Porto, G. Postich, D.E. Powell, R.W.
Prentice, J.V. Presutti, W.C. Price, L.E. Raykovics, T.R.
Reed, J.W. Reider, J.J. Rose, A.J. Rosepiller, C.S. Russell,
K.E. Sanders, M.A. Sarver, P.K. Schake, J.W. Scholtz, A.H.
Sheline, M.L. Sherry, F.R. Shuss, W.W. Simpson, A.E. Six,
J.E. Smith, E.H. Spaziani, W.H. Stephens, C.D. Strosnider,
J.F. Suffoletta, H.L. Taylor, K.E. Thomas, F.S. Thornberry,
Jr., J.R. Tice, D.A. Townley, R. Trbovich, R.T. Turner, H.B.
Van Fossen, R.R. Vlah, A. Vranes, S. Vranes, D.W. Ware, K.G.
Wassman, Jr., G.T. Weekley, E.M. Werries, Jr., D.L.
Westfall, J.A. Whithead, R.J. Whitten, C.K. Wildman, T.
Williams, Jr., T.H. Wills, Jr., A.J. Yanni, L.H. Young, Jr.,
R.C. Young, H.F. Yute, W.I. Zazwirsky, Appellants in No. 91-3379,
v.
INFORMAL PLAN FOR PLANT SHUTDOWN BENEFITS FOR SALARIED
EMPLOYEES, Informal Plan for Plant Shutdown Benefits for
Salaried Employees; Informal Plan for Plant Shutdown
Benefits for Salaried Employees, Plan for Maintaining
Benefits for Salaried Employees in Parity with Benefits
Granted to Union Represented Employees.
George W. HENGLEIN, L.C. Albacker, R.B. Andrews, R.L.
Appeldorn, R.H. Ashenbaugh, A.L. Austin, J.W. Bagosi, J.D.
Balser, A. Barrasso, J.O. Bauer, E.E. Best, H.W. Bigleman,
C.R. Blazier, J.P. Bressanelli, G.D. Brown, F.C. Buchholz,
E.C. Calvin, R.R. Campbell, P.D. Castellano, J.L. Cerasi, E.
Chapman, S. Christy, T.M. Costello, C.A. Dauka, A.J.
Decosta, M.G. Degrande, A.S. Diccio, A.P. Dimarzio, C.J.
Dimarzio, R.J. Dougherty, M. Druga, E.P. Erath, E.P.
Fahnert, H. Farrington, M. Ferlaino, R.D. Feydo, E.R.
Finger, J.N. Flara, N.E. Frederick, J.P. Frenn, R.E. Fronko,
L.L. Gibbs, W.L. Gleason, L.E. Gordon, R.W. Gott, J.E.
Grimm, P.E. Grubbs, E.R. Guerra, A.J. Gulutz, J.T. Haaf,
J.D. Hamacher, Jr., P.J. Hannon, R.M. Hansen, M.I. Harpham,
D.H. Heldman, J.K. Hile, R.S. Hogsett, R.T. Hopper, H.M.
Howell, W.M. Hyams, J.M. Janke, C.L. Jobe, Jr., K.H. Johns,
R.O. Johnson, Jr., E.T. Jones, R. Kao, D.P. Kerr, Jr., P.A.
Keys, R.W. Knallay, E.E. Knapek, W.J. Kofalt, S.W. Kohler,
T. Kominitsky, T.R. Krupa, P.R. Kullen, J.R. Kundick, W.
Lake, D.F. Lavene, T.T. Lehmann, R.H. Lewis, R.A. Lippert,
W.R. Livingston, J.H. Lutton, A.J. Lynn, D.B. McClain, J.L.
McKain, P.F. McNicol, E.L. Marsh, F.S. Matsukas, H.J.
Mercer, A.R. Middleton, M. Mitrovich, M.A. Molchan, R.A.
Montgomery, R.T. Morelli, A.N. Morrison, H. Mraunac, M.R.
Muckian, C.W. Murray, III, C.J. Muers, L.V. Nagle, D.A.
Nobers, J.A. Nuzo, E. Ordich, W.H. Orr, T.H. Parsons, A.J.
Pasko, Jr., H.S. Pease, III, G.J. Pescion, G.V. Peterson,
J.J. Popp, G.P. Porto, G. Postich, D.E. Powell, R.W.
Prentice, J.V. Presutti, W.C. Price, L.E. Raykovics, T.R.
Reed, J.W. Reider, J.J. Rose, A.J. Rosepiller, C.S. Russell,
K.E. Sanders, M.A. Sarver, P.K. Schake, J.W. Scholtz, A.H.
Sheline, M.L. Sherry, F.R. Shuss, W.W. Simpson, A.E. Six,
J.E. Smith, E.H. Spaziani, W.H. Stephens, C.D. Strosnider,
J.F. Suffoletta, H.L. Taylor, K.E. Thomas, F.S. Thornberry,
Jr., J.R. Tice, D.A. Townley, R. Trbovich, R.T. Turner, H.B.
Van Fossen, R.R. Vlah, A. Vranes, S. Vranes, D.W. Ware, K.G.
Wassman, Jr., G.T. Weekley, E.M. Werries, Jr., D.L.
Westfall, J.A. Whithead, R.J. Whitten, C.K. Wildman, T.
Williams, Jr., T.H. Wills, Jr., A.J. Yanni, L.H. Young, Jr.,
R.C. Young, H.F. Yute, W.I. Zazwirsky
v.
INFORMAL PLAN FOR PLANT SHUTDOWN BENEFITS FOR SALARIED
EMPLOYEES, Informal Plan for Plant Shutdown Benefits for
Salaried Employees; Informal Plan for Plant Shutdown
Benefits for Salaried Employees, Plan for Maintaining
Benefits for Salaried Employees in Parity with Benefits
Granted to Union Represented Employees
Colt Industries Operating Corporation Informal Plan for
Plant Shutdown Benefits for Salaried Employees,
Appellant in No. 91-3413.
 Nos. 91-3379, 91-3413.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 28, 1992.
Decided Sept. 8, 1992.
 
 James J. Ahearn (argued), Ligonier, Pa., for appellants cross appellees.
 William H. Powderly, III (argued), Paula E. Ganz, Joan C. Zangrilli, Jones, Day, Reavis & Pogue, Pittsburgh, Pa., for appellees cross appellants.
 Before: SLOVITER, Chief Judge, and MANSMANN and HUTCHINSON, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 We write to clarify that, in an ERISA action, a plaintiff's failure to prove the existence of an employee benefit plan, though it results in a dismissal of the claim, does not deprive the district court of subject matter jurisdiction to enter a judgment on the merits. Additionally, we examine the standard for determining, in the absence of a formal plan document, whether an informal employee benefit plan exists. Because the district court used a vague standard to conclude a plan did not exist, and erroneously ruled that the absence of a plan deprived the court of jurisdiction, we will vacate the judgment of the district court and remand for further proceedings.
 
 I.
 
 2
 The plaintiffs are former salaried nonunion employees of a steel plant closed in 1982. These employees seek to prove that their employer and its successors in interest maintained an informal benefit plan. They claim that this "Informal Plan" entitles them to severance benefits.
 
 
 3
 To prove the existence of the Informal Plan, the employees have referred to the following events and documents.
 
 
 4
 Effective July 1, 1962, Crucible, Inc., the owner of the plant, instituted a severance benefit that gave to laid-off employees, aged 60 or older with 15 or more years of service, an immediate retirement benefit without actuarial reduction, plus $25 per month until they became eligible for social security. The document's procedure allowed an employee's supervisor to propose the benefit through channels to the Retirement Board and to charge the cost of the benefit, if approved, back to the employee's department. A 1965 memorandum expanded on these procedures. See R. at 78-82.
 
 
 5
 In 1968, a new memorandum added the immediate receipt of a "Special Retirement Benefit."[1] The 1968 Memorandum also instituted "20-30 year retirement," in which laid-off employees having between 20 and 30 years of service, who would not be eligible for early retirement benefits, would receive the Special Retirement Benefit and an immediate, actuarially reduced annuity. The 1968 Memorandum also expanded in great detail upon the procedure for applying for the benefit. See R. at 127-163. The employees claim that the 1968 Memorandum was widely distributed. See Appellants' Brief at 17; R. at 259-60 (memo referring to informal plan would have been distributed to all salaried employees if so addressed).
 
 
 6
 Soon after the 1968 Memorandum, Crucible issued a proxy statement in conjunction with Colt Industries, pursuant to a proposed consolidation of the two companies. One sentence of the proxy statement read: "Benefits under the various benefit, retirement and pension plans of Crucible will not be affected by the consolidation...." R. at 120.
 
 
 7
 After the consolidation, a document dated February 2, 1969, outlined benefits and a claims procedure that were similar to the benefits and procedure in the 1968 Memorandum. The employees claim that they did not receive the 1969 Memorandum or notice of its contents, which were confidential. See R. at 137 (cover letter limiting distribution). The 1969 Memorandum clearly noted that "employees do not have a right to these benefits," and it also purported to terminate the 1968 Memorandum. R. at 137-48. The employees also allege that they did not have notice of a 1972 resolution by Crucible's Board of Directors to rescind the 1969 Memorandum, and the defendant has admitted that written notice of the 1972 resolution was not disseminated to the employees generally. See, e.g., Appellant's Brief, at 5; R. at 192 (defendant's admission).
 
 
 8
 The employees claim that, throughout their employment, they were consistently assured that they would receive benefits "equal to or better than" union benefits, which were similar to those in the 1968 and 1969 Memoranda. See, e.g., Supp.App. at 99. Similarly, employees testified that they had a general knowledge that the 1968 plan existed. See, e.g., Supp.App. at 22, 26. The plaintiffs also offered evidence that the company knew that employees believed there was an Informal Plan, and that the company did not inform them otherwise. For example, an internal memo by E.A. March insisted that "there is no informal plan" and stated that efforts would be made to so inform employees in a retirement plan booklet. R. at 329. We have not been provided any evidence, however, that efforts were, in fact, made.
 
 
 9
 After the employees were terminated in 1982, they sued the Informal Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a cause of action against a plan to recover benefits due. After the presentation of the employees' case-in-chief on liability in this bifurcated non-jury trial, the district court, holding that an employee benefit plan did not exist, dismissed the employees' claims.
 
 
 10
 Under the district court's analysis, the employees' claim for benefits was contingent on the existence--prior to the enactment of ERISA--of a valid unilateral offer under Pennsylvania law. The court determined that the employees had not received a binding unilateral offer prior to ERISA's enactment in 1975 and therefore an employee benefit plan did not exist. Alternatively, and with little discussion, the district court held that the employees had not proved the existence of an employee benefit plan under the current ERISA standard first articulated in Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982).
 
 The district court concluded:
 
 11
 Two results flow from our deciding that no ERISA plan existed. First, we must dismiss the cause for want of subject matter jurisdiction.... Second, ERISA, by its terms, would not preempt any state law based on these same actions since they do not relate to a benefit plan.
 
 
 12
 Henglein v. Colt Indus. Operating Corp. Informal Plan for Plant Shutdown Benefits for Salaried Employees, No. 86-2021, at 6 (W.D.Pa. April 30, 1991) (unreported mem. op.) (citations omitted).
 
 
 13
 The district court dismissed the employees' case pursuant to former Federal Rule of Civil Procedure 41(b), which allowed defendants to move for judgment after a plaintiff's case-in-chief. See former Fed.R.Civ.Pro. 41(b), at 480 U.S. 992 (1987) (S.Ct. order containing text of former rule 41(b)).[2] Consistent with its view that the dismissal was jurisdictional, however, the district court did not find facts specially, as former Rule 41(b) would have required in the event of a judgment on the merits. See former Rule 41(b) (fourth sentence); Fed.R.Civ.Pro. 52(a).
 
 
 14
 The employees appealed the dismissal, and the defendants, arguing that the dismissal was on the merits, cross-appealed.
 
 II.
 
 15
 In an appeal from an involuntary dismissal after the presentation of evidence, see former Rule 41(b) (second sentence), we review the district court's findings of fact for clear error, and we exercise plenary review over the district court's legal conclusions. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 503 (9th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1900); EEOC v. Metal Svc. Co., 892 F.2d 341, 346 n. 5 (3d Cir.1990). We have jurisdiction of this appeal from a final decision of the district court. See 28 U.S.C. § 1291.
 
 III.
 
 16
 At the outset of our discussion, we observe that the employees have not brought any state claims in this case. Although the litigants have presented arguments sounding in state contract and tort law, the employees have not joined any party other than two putative employee benefit plans. It is axiomatic that a breach of contract claim must be brought against a breaching party and that a fraud claim must be brought against a party making the misrepresentation. Moreover, the complaint clearly grounds this cause of action in 29 U.S.C. § 1132. Because the employees have sued only the plans and have alleged only ERISA claims, we construe their causes of action to have been brought solely pursuant to 29 U.S.C. § 1132(a)(1) and not pursuant to state law.
 
 
 17
 The significance of our observation--that the employees have not alleged state law claims--relates to the issues of supplemental jurisdiction and of ERISA's non-retroactivity provision. We turn to those precepts now.
 
 IV.
 A.
 
 18
 ERISA gives United States district courts subject matter jurisdiction of claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a cause of action for benefits due under an employee benefit plan. See 29 U.S.C. § 1132(e) (jurisdiction). Although § 1132(a) and § 1132(e) are related, the viability of a claim under § 1132(a)(1)(B) and jurisdiction pursuant to § 1132(e) are separate matters, and they should not be confused.
 
 
 19
 In an analogous case, Boyle v. Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71 (3d Cir.1991), a district court had determined that a § 1983 defendant was not a state actor. The district court had then dismissed the plaintiff's case on the grounds of lack of subject matter jurisdiction. We reversed, holding that the § 1983 requirement of state action was not jurisdictional but rather integral to the merits of the claim. We further held that the district court's dismissal was only appropriate as under Rule 12(b)(6) (failure to state a claim) or as a grant of summary judgment if matters outside the pleadings had been considered. We noted that once federal law is invoked, then the facts alleged and their legal sufficiency are questions on the merits. Boyle, 925 F.2d at 74.
 
 
 20
 In ERISA cases such as this one, the existence of an employee benefit plan is integral to the merits of a claim for benefits under § 1132(a)(1)(B). Here, the district court concluded that a plan did not exist.[3] That conclusion related to the viability of the claim but not to the district court's jurisdiction. Thus, although the district court labeled its judgment as a dismissal entered for lack of subject matter jurisdiction, the judgment was clearly on the merits; that is, the district court reached a legal conclusion--to which the rules of issue and claim preclusion apply--that the employees had not proven the existence of a plan. Cf. Boyle, 925 F.2d at 74 (once federal law is invoked, facts and their legal sufficiency are questions on merits).
 
 
 21
 Furthermore, because the employees have not in fact asserted any supplemental state law claims, we need not address whether they might have done so. This case thus differs from a case like Harris v. Arkansas Book Co., 794 F.2d 358 (8th Cir.1986). In the Harris case, the Court of Appeals for the Eighth Circuit determined that an ERISA plan did not exist. The court then affirmed the district court's dismissal of the plaintiff's ERISA claim without prejudice to his supplemental state law claims.
 
 
 22
 Although we disagree with any statement in Harris that might indicate that the absence of a plan deprives the court of subject matter jurisdiction, it is well settled that, after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a supplemental claim for which there is no independent basis for federal subject matter jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); see also 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3567.1 (2d ed. 1984 & Supp.1992).
 
 
 23
 Indeed, the district court in this case appears to have dismissed the employees' ERISA claims as if they were supplemental state law claims; the district court first opined that the employees may have state law claims, and then the court dismissed for "lack of subject matter jurisdiction." Because, however, the district court had jurisdiction over the ERISA claims, and because the court was not presented with any supplemental claims, the district court erred in stating the dismissal as "jurisdictional."
 
 B.
 
 24
 We note further that the district court interpreted ERISA's "non-retroactivity" provision, 29 U.S.C. § 1144(b)(1), to require application of state rather than federal law here. Section 1144(b)(1) provides that ERISA does not apply to causes of action that arose or to acts or omissions that occurred before 1975. In Jameson v. Bethlehem Steel Corp. Pension Plan, 765 F.2d 49, 52 (3d Cir.1985), we held that the denial of employee benefits after 1975 gives rise to federal jurisdiction, even if the substantive issues were to be decided by pre-ERISA law. If the employees had brought an additional count sounding in contract against the companies, then the district court might have had either supplemental jurisdiction of the claim or federal question jurisdiction if the contract could be construed as an employee benefit plan. See Jameson, 765 F.2d at 52. The court, in that situation, would have been correct in determining the outcome by reference to state law. Id.
 
 
 25
 But, as we noted above, although the employees have argued state contract law issues, vigorously in some instances, they have not joined the putative contracting parties. Instead they have alleged the existence of and proceeded against an ERISA plan. State contract law is therefore not dispositive of the employees' claim.
 
 
 26
 Thus, the employees' claim here is that in 1982 the company had an informal employee benefit plan under which the employees were entitled to benefits. That claim must be resolved not under state law, but under ERISA, which refers to the surrounding circumstances to determine if a plan existed at the time benefits were denied. See Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982). Those surrounding circumstances include the company's history of representations--a history that straddles the enactment of ERISA.
 
 V.
 
 27
 Before we examine the ERISA standard for determining the existence of an informal plan, we note that the question of a plan's enforceability prior to ERISA and the question of a plan's existence are different questions. ERISA applied, although not retroactively, to plans already in existence at the time of its enactment. Compare 29 U.S.C. § 1002(1) (defining plans to include any plan, program or fund "heretofore or hereinafter established"), with 29 U.S.C. § 1144(b)(1) (non-retroactivity). Indeed, ERISA was enacted to afford protections to participants of already existing plans. See, e.g., 29 U.S.C. § 1001 (Congressional Findings and Declaration of Policy, finding a recent rapid and substantial growth in employee benefit plans and declaring ERISA's policy to be the protection of participants' interests by establishing standards with respect those plans). Thus the pre-ERISA enforceability of a plan under state law is not a prerequisite to a finding that an employee benefit plan exists.
 
 
 28
 For example, if a company established a welfare plan prior to ERISA, ERISA's substantive requirements would not apply to the company's acts or omissions occurring before ERISA's effective date of 1975. Assuming the welfare plan was a mere gratuity, a denial of benefits in 1974 would not be enforceable under state contract law for failure of consideration. If maintained, however, the plan would become subject to ERISA in 1975.
 
 
 29
 If, in the example, benefits were denied not in 1974, but in 1976, a district court would have jurisdiction to hear both a contract claim, see Jameson, 765 F.2d at 52, and an ERISA claim. See 29 U.S.C. § 1132 (authorizing claims for benefits due under plans); id. § 1002(1) (including in its definition any plans "heretofore or ... hereinafter established" (emphasis added)). The court would apply state contract law to the contract claim and federal law to the ERISA claim.
 
 
 30
 In the example, pre-ERISA evidence (e.g., a 1972 plan document) would be relevant to show the plan's existence for purposes of the claim, and its use as evidence would not contravene ERISA's non-retroactivity requirement. In some situations, pre-ERISA rules might govern aspects of the ERISA claim. For example, in Tanzillo v. Local 617, 769 F.2d 140 (3d Cir.1985) we noted that "nothing in ERISA prevents a plan from 'expressly providing that a break in service in years prior to the effective date of ERISA shall be governed by the rule in effect at the time of the alleged hiatus from covered employment.' " Id. at 146 (citation omitted).
 
 
 31
 Here, as in the example, pre-ERISA documents and events are relevant to prove or disprove the existence, in 1982, of an informal plan. And although the existence of a plan is a prerequisite to recovery under ERISA, the enforceability of that plan under the state law of unilateral contracts is not. Thus, the district court's focus on the state law of unilateral contracts was misplaced.
 
 
 32
 We now turn to the merits of the dispute and the legal standards to be applied here.
 
 VI.
 
 33
 In determining the existence of an employee benefit plan, the district court also referred to the ERISA standard first articulated by the Court of Appeals for the Eleventh Circuit. In Donovan v. Dillingham, 688 F.2d 1367 (11th Cir.1982), the court wrote: "In determining whether a plan, fund, or program (pursuant to a writing or not) is a reality, a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Id. at 1373.
 
 
 34
 We have acknowledged the Dillingham standard in previous cases. See United States v. Cusumano, 943 F.2d 305, 309 (3rd Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992); Frank v. Colt Indus., Inc., 910 F.2d 90, 97-98 (3rd Cir.1990). As well, our sister courts of appeals have ruled, on at least six occasions since Dillingham, that an informal severance arrangement may constitute an employee benefit plan subject to ERISA.[4]
 
 
 35
 In determining whether an informal plan exists under the Dillingham standard, a district court should first determine what written representations were made by a putative sponsor to its employees over the course of their employment.
 
 
 36
 A properly distributed summary plan document containing a clear statement that employees did not have any severance benefits would be dispositive, because a written plan cannot be orally modified. Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163-64 (3rd Cir.1990). For the same reason, a summary plan document that clearly limits benefits to those provided in a formal plan would be dispositive. We note that either statement would have to be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). Thus, the sponsor's formal plans and summary plan documents should be of particular interest to the district court, and a clear delineation in a properly distributed document would be dispositive. The absence of any integration clause in a formal plan, however, might lead the district court to infer that another, informal plan did exist. Additionally, widely distributed informal documents should also be of interest since a widely distributed written plan, no matter how informal, cannot be modified orally. See Frank v. Colt Indus., 910 F.2d 90, 98 (3d Cir.1990) (written plans, no matter how informal, cannot be orally modified); Confer v. Custom Engineering Co., 952 F.2d 41, 43 (3d Cir.1991) (no oral modification).
 
 
 37
 If a company's properly published written representations do not clearly limit benefits, the district court should consider all other evidence that would indicate the presence or absence of an informal employee benefit plan. For example, internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, a deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor would all be relevant to determine whether a plan existed. In determining an employee's reasonable understanding, the district court may consider the employee's background knowledge of particular documents (such as union benefit plans) and whether any representations of the company incorporated the terms of those documents. So long as they do not modify the terms of a written plan, oral representations by a knowledgeable and authorized management employee of the company may be evidence of a benefit plan, especially if a representation incorporates by reference the terms of a document or other plan. See Scott v. Gulf Oil Corp., 754 F.2d 1499, 1503-04 (9th Cir.1985) (existence of written instrument not a prerequisite to ERISA coverage).
 
 
 38
 We emphasize that an oral representation cannot modify a valid written plan. Confer, 952 F.2d at 43. But where the oral remarks give evidence of a separate plan not precluded by a written plan, the district court may credit the representations as evidence of a plan. To do so is entirely consistent with ERISA's dual purpose of protecting the reasonable expectations of plan participants while allowing sponsors the flexibility to structure a plan with an express limitation in writing. To do otherwise would create a loophole inconsistent with ERISA by allowing a plan sponsor to make any promise regarding benefits without obligation, so long as the promise is not reduced to writing.
 
 VII.
 
 39
 Although the district court purported to apply Dillingham, its application of law to the facts was unduly narrow. The district court considered only the 1969 Memorandum and the 1972 resolution.
 
 
 40
 The district court observed that the 1969 Memorandum provides only discretionary benefits and therefore did not give notice of any intended benefit or class of beneficiaries. The discretionary nature of benefits, however, does not alone deprive a document or program of its status as an employee benefit plan under the Dillingham standard, so long as a reasonable person can ascertain the contingent benefit and contingent beneficiaries. If an intended benefit is discretionary, then beneficiaries' rights are limited, and review of a denial of benefits will be for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (where trustee of a plan has discretion, court review is limited to restraining abuse of that discretion). A plan participant may still seek review of the denial of a benefit under an employee benefit plan, even if the only benefit available is conditioned on an administrator's discretion. See, e.g., Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999 (3d Cir.1992) (reviewing benefit denial for abuse of discretion).
 
 
 41
 Furthermore, the 1972 resolution may not have been publicized, and the district court did not determine whether the 1969 plan was widely circulated. Although an unpublicized repeal of a published program for providing benefits may evince some intent not to maintain that program, the district court must also consider public actions of the company and whether a reasonable person could determine the necessary elements of a plan by those actions. Thus, if the company had continued to promise to pay the plan's benefits, the company's promises would be evidence that the company had maintained the plan, despite the resolution. Similarly, if the company deliberately failed to inform the employees of the plan's putative repeal, that too would indicate that the company maintained the plan. It would be for the district court, in the first instance, to determine whether the employees have proved the existence of a plan after considering any conflicting evidence.
 
 
 42
 The district court also appears to have considered the employees' unfamiliarity with the terms of the 1968 and the 1969 Memoranda, but did not explain its relevance to a claim for benefits under ERISA. ERISA does not require that a beneficiary have any knowledge of a written plan's terms, and our federal jurisprudence has not imposed that requirement either. See Dillingham, 688 F.2d at 1367 (standard for determining plan's existence); Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 550-51 (6th Cir.1989) (a plan existed despite employees unawareness of its terms); see also Frank v. Colt Indus., 910 F.2d at 97-98 (adopting Dillingham ). The employees' unfamiliarity with the 1968 Memorandum, either as of 1968 or at the present time, is therefore not dispositive. Finally, we note that the district court did not consider events subsequent to 1975, the most relevant period of time for purposes of determining the existence or maintenance of a plan. Without that consideration, the court's Dillingham analysis cannot be said to be complete.
 
 
 43
 We will thus remand the case for further findings of fact and conclusions of law to be made after the presentation of any necessary additional evidence. If upon considering all the relevant evidence the district court determines that an employee benefit plan existed in 1982, the district court must then determine and quantify the benefits, if any, that the employees have under the plan and review the denial of those benefits by the appropriate standard of review.
 
 VIII.
 
 44
 In their complaint, the employees also claimed benefits under a "Parity Plan." They asserted that the company instituted a plan to pay benefits to nonunion employees in parity with union benefits. In a separate, declaratory judgment action initiated by Colt Industries, however, the district court granted Colt Industries declaratory relief, ruling that a "Parity Plan" did not exist. See Colt Indus. v. Frenn, No. 86-2642 (W.D.Pa. dated Dec. 23, 1988) (order granting Colt Industries, Inc. declaratory judgment on Count III of its complaint seeking declaration that a Parity Plan did not exist). The employees did not appeal that ruling. Because the employees did not appeal, the district court's ruling that a Parity Plan did not exist was a final judgment on the merits.
 
 
 45
 This is the same issue now presented here. The employees do not dispute that they were parties to the earlier litigation and had a full and fair opportunity to litigate the issue in the prior action. The defendants properly raised collateral estoppel as an affirmative defense, and so the employees are barred from relitigating the issue once again. See R. at 105 (answer containing affirmative defense); Temple University v. White, 941 F.2d 201, 212 (3d Cir.1991) (holding that collateral estoppel bars relitigation of an issue when (1) an identical issue was decided in a prior adjudication for which (2) a final judgment on the merits exists against (3) a party to the prior litigation who had (4) a full and fair opportunity to litigate the issues), cert. denied, --- U.S. ----, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). On remand the district court should dismiss the Parity Plan claim on the merits.
 
 IX.
 
 46
 Finally, the employees contend that they are entitled to a jury trial on the issue of fraud because the various companies intentionally misrepresented the availability of shutdown benefits in order to induce employees to leave union jobs or to remain at work. In this lawsuit, however, the employees never joined any of the companies. The sole defendants are the Informal Plan and the Parity Plan. Because those persons who might have misrepresented benefits are not parties to this litigation, we need not address whether a claim of employee benefits fraud may be brought against a plan's sponsor or fiduciary under ERISA or state law. Because a plan specifies the benefits available, a fortiori it cannot misdescribe those benefits and therefore cannot be liable for intentionally misdescribing them. If benefits are unclear or if descriptions conflict under a plan, participants have a cause of action under ERISA to clarify those benefits. See 29 U.S.C. § 1132. Thus the employees' claim for punitive damages against an ERISA plan is not cognizable. On remand the district court should dismiss the fraud claim against the defendant Informal Plan on the merits.
 
 X.
 
 47
 For the foregoing reasons, we will vacate the district court's dismissal of the complaint for lack of subject matter jurisdiction. On remand, the district court should dismiss on the merits both Count II, alleging the existence of a Parity Plan, and Count III, seeking punitive damages. Furthermore, we will remand for any necessary presentation of further evidence, after which the district court will determine--under the standards and procedures articulated in Parts VI and VII(B) of this opinion--whether an informal employee benefit plan existed in 1982 and, if so, what benefits, if any, the employees may recover.
 
 
 48
 If, after the presentation of any additional, relevant evidence, the employees have failed to prove either the existence of an employee benefit plan or any other necessary element of their claim, the district court, on motion, should find facts specially and separately state conclusions of law pursuant to Rule 52(a) before entering judgment on the merits.
 
 
 
 [1]
 It appears that Crucible's Formal Plan defined this term as some fraction of a yearly salary
 
 
 [2]
 Former Rule 41(b), which was in effect until December 1, 1991, provides:
 Involuntary dismissal: effect thereof.--For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
 
 
 [3]
 We review that conclusion infra
 
 
 [4]
 In Williams v. Wright, 927 F.2d 1540 (11th Cir.1991), the court, citing Dillingham, held that a letter to a single employee was an employee benefit plan, even though the employer's general assets were the source of financing and the administrative procedures were simple. Id. at 1544-45
 In Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546 (6th Cir.1989), an employer's promulgation of severance guidelines created an ERISA plan, even though affected employees had not known of the guidelines. Id. at 551. The court reasoned that it would be antithetical to ERISA's purposes to allow an employer to create an employee benefit plan and then deny benefits on the ground that it never communicated the plan (a violation of ERISA's disclosure requirements). Id.
 The Court of Appeals for the Ninth Circuit has held that an oral promise to pay severance pay may be a welfare benefit plan under the Dillingham standard. Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504 (9th Cir.1985). It has also held that a confidential policy was an ERISA plan in spite of the employer's concealment of the policy and in spite of an absence of payment mechanisms. Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir.), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1984); see also Gilbert v. Burlington Indus., Inc., 765 F.2d 320 (2d Cir.1985) (unfunded severance pay policy is ERISA plan and therefore governed by federal, not state, law), aff'd without opinion, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); Holland v. Burlington Indus., Inc., 772 F.2d 1140 (4th Cir.1985) (same facts and holding as Gilbert ), aff'd. without opinion, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986).