# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3977

KELLY BRINES, on behalf of herself
and all others similarly situated,

*Plaintiff-Appellant,*

v.

XTRA CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00 C 495—**G. Patrick Murphy**, *Chief Judge.*

ARGUED MAY 24, 2002—DECIDED SEPTEMBER 10, 2002

Before POSNER, MANION, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a class action under ERISA on behalf of 55 employees terminated when their employer, XTRA, transferred the part of its business in which they worked to ContainerPort. They claim that XTRA's welfare benefits plan entitled them to severance pay even though they were offered the same employment by ContainerPort without a break on essentially the same terms. The district judge granted summary judgment for XTRA.

XTRA's 1992 plan promised severance pay in a specific amount "if the Company determines that there should be a reduction in the workforce for business reasons." The following year's plan, the one applicable to the members of the plaintiff class, replaced the severance provision in the previous plan with the following: "The company will develop and implement an appropriate separation program if business and economic conditions necessitate a reduction in force." ContainerPort hired all 55 class members at the same wages, plus 3 percent, that they had received from XTRA, with a benefits package similar though not identical, and in relatively minor respects less generous, than what they had had at XTRA.

They argue that they were the victims of a reduction in force, but that is a term used to describe a mass layoff, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195, 1197 (7th Cir. 1997); *Tiltti v. Weise*, 155 F.3d 596, 601 (2d Cir. 1998), rather than the sale of a whole or the part of a business. *Allen v. Adage, Inc.*, 967 F.2d 695, 700 (1st Cir. 1992). The curious logic of their argument is that had XTRA merely transferred the part of the business they worked in to a wholly owned subsidiary of which they then became employees, they would be entitled to severance benefits because they had been terminated by XTRA. But the problem with the suit goes deeper. The 1993 plan did not promise severance pay to workers who were terminated, whether because of a reduction in force or otherwise. The statement in the plan that "The company will develop and implement an appropriate separation program" did not create a legally enforceable promise. Its vagueness alone would make it impossible for a court to provide any relief to the members of the class, who are seeking after all cash rather than the establishment of a program left to the employer's discretion to establish

and define at some undetermined future time. What is an "appropriate" separation program? The possibilities are endless. And by when was the company required to develop the program and put it into effect?

A court will not enforce a contract that is so vague that the court rather than the parties would have to formulate essential terms. *Goldstick v. ICM Realty*, 788 F.2d 456, 461 (7th Cir. 1986); *Neeley v. Bankers Trust Co.*, 757 F.2d 621, 627-28 (5th Cir. 1985); *Brookhaven Housing Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978). And the vagueness of the "will develop" statement is a strong indication that it was not *intended* to be a promise, *Western Industries, Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198, 1205 (7th Cir. 1984); *Neeley v. Bankers Trust Co., supra*, 757 F.2d at 627, but merely a prediction, which creates no rights. *Rexnord Corp. v. DeWolff Boberg & Associates, Inc.*, 286 F.3d 1001, 1005-06 (7th Cir. 2002).

The cases say that an ERISA plan need not be in writing in order to be enforceable. *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811-12 (7th Cir. 1994); *Donovan v. Dillingham*, 688 F.2d 1367, 1372-73 (11th Cir. 1982) (en banc); *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257-58 (D.C. Cir. 1994). It just has to exist, in the sense that its essential terms are ascertainable (so that it doesn't flunk on vagueness grounds) and that it "was intended to be in effect, and not just be something for future adoption." *James v. National Business Systems, Inc.*, 924 F.2d 718, 720 (7th Cir. 1991). The statute requires plans to be in writing, 29 U.S.C. § 1102(a)(1); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995), but the courts reason that a failure to comply with that requirement should not redound to the company's benefit. *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990); *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 551

(6th Cir. 1989); *Donovan v. Dillingham, supra*, 688 F.2d at 1372. And while oral modifications of ERISA plans are not permitted, *Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986), employers often have different plans covering different benefits, and it is conceivable that some might be written and some oral, with the oral enforceable so long as they did not (as in *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 959-60 (8th Cir. 1995)) contradict the written plan.

What we have been calling an "oral" plan is better termed an "informal" plan, the term used in such cases as *Deboard v. Sunshine Mining and Refining Co.*, 208 F.3d 1228, 1238-39 (10th Cir. 2000); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861 (4th Cir. 1994) (en banc), and *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 400-01 (3d Cir. 1992). For it will usually be pieced out from documents (though oral testimony may be necessary to interpret them as constituting a plan), just not set forth in a nicely wrapped package labeled "employee welfare benefits plan." And so "written plan" (in the "written"-"oral" antithesis) is better termed "express" or "formal" plan. Even so, if the informal plan, though entirely written, modifies an existing plan, the modification is an amendment and to be valid must comply with any procedural requirements for a valid amendment that are set forth in the formal plan, *Downs v. World Color Press*, *supra*, 214 F.3d at 805; *Brewer v. Protexall, Inc.*, 50 F.3d 453, 456-57 (7th Cir. 1995); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-59 (4th Cir. 1992)—the plan's counterpart to Article VI of the U.S. Constitution.

There is a fair bit of judicial skepticism about "informal plans"—specifically whether by allowing their concoction by imaginative counsel in litigation employers will actually

be deterred from offering certain types of benefit. See, e.g., *Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988). Perhaps it would be better to describe informal plans as simple contracts, enforceable under state law rather than under ERISA, a distinction suggested in two of our prior cases. *Frahm v. Equitable Life Assurance Society*, 137 F.3d 955, 957-58 (7th Cir. 1998); *Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 797-98 (7th Cir. 2000); cf. *Massachusetts v. Morash*, 490 U.S. 107, 118-19 (1989). We need not pursue the matter further. Even if it is open to the plaintiff to argue that XTRA replaced its discontinued severance plan with an informal one, see *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, supra*, 974 F.2d at 400-01; *Elmore v. Cone Mills Corp., supra*, 23 F.3d at 861, his effort to show this falls short.

XTRA's statement in the 1993 plan of its intention to create a program of severance benefits could not be the informal plan that replaced the severance provision in the 1992 plan, for the reasons that we've explained. But the plaintiff points out that on a number of occasions after 1992 the company paid severance benefits to discharged workers in accordance with the formula in the 1992 plan, and he argues that this "ongoing practice and procedure to pay [severance] benefits in the past, pursuant to XTRA's standard formula," constituted a successor plan. The year before the transfer to ContainerPort, XTRA had discussed a possible merger with another company (Apollo) and had informed its employees that it would provide severance pay if they weren't offered a permanent comparable position in an affiliate of XTRA. And executives of XTRA acknowledged that they would have given the members of the plaintiff's class severance pay had they not been offered comparable jobs

by ContainerPort. (The plaintiff argues that they were not really comparable, but we need not decide that.) XTRA did give severance pay—calculated by the standard formula—to the one employee to whom ContainerPort did not offer a job.

The company's statements were not, as the plaintiff claims, "admissions" that "there was a severance benefit plan." They were merely descriptions of an acknowledged practice. Practices do sometimes have legal significance, however. A practice can be the basis for inferring a policy that can make a municipality liable for a constitutional tort under the regime of the *Monell* decision, *Cornfield by Lewis v. Consolidated High School District No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993), or for inferring that the user of another person's land has become a licensee. *Wytupeck v. Camden*, 136 A.2d 887, 894-95 (N.J. 1958). A little closer to home, a practice, under the rubric "course of dealing," can be evidence of what a contract requires. See, e.g., UCC § 1-205; *Restatement (Second) of Contracts* § 223 (1981); *Frank Novak & Sons, Inc. v. Sommer & Maca Industries, Inc.*, 538 N.E.2d 700, 703-05 (Ill. App. 1989). But the plaintiff in this case wants to use the employer's practice of paying severance pay not to explicate a contract but to create one; and a practice does not create an obligation under the principles of contract law (the principles normally and here applicable to teasing out the obligations created by a pension or welfare plan governed by ERISA) unless it creates a contract "implied in fact."

A contract implied in fact is one in which behavior takes the place of articulate acceptance, as in *Hobbs v. Massasoit Whip Co.*, 33 N.E. 495 (Mass. 1893) (Holmes, J.), a suit

> for the price of eel skins sent by the plaintiff to the defendant, and kept by the defendant some months, until they were destroyed. It must be taken that the plaintiff received no notice that the defendants de-

clined to accept the skins. . . . The plaintiff was not a stranger to the defendant, even if there was no contract between them. He had sent eel skins in the same way four or five times before, and they had been accepted and paid for. . . . [It] was fair to assume that if [the defendant] had admitted the eel skins to be over 22 inches in length, and fit for its business, . . . it would have accepted them; that this was understood by the plaintiff; and, indeed, that there was a standing offer to him for such skins. In such a condition of things, the plaintiff was warranted in sending the defendant skins conforming to the requirements, and even if the offer was not such that the contract was made as soon as skins corresponding to its terms were sent, sending them did impose on the defendant a duty to act about them; and silence on its part, coupled with a retention of the skins for an unreasonable time, might be found by the jury to warrant the plaintiff in assuming that they were accepted, and thus to amount to an acceptance. The proposition stands on the general principle that conduct which imports acceptance or assent is acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party.

See also *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 956-57 (7th Cir. 2002); *Dallis v. Don Cunningham & Associates*, 11 F.3d 713, 715-16 (7th Cir. 1993). The plaintiff in Holmes's case had by reason of his previous dealings with the defendant good reason to believe that the defendant would not destroy the eel skins; indeed, the plaintiff would not have sent them to the defendant had he thought there was such a risk. The plaintiff in the present case, a supplier of labor albeit not of eels, did not "offer" to work in exchange for a promise of severance pay, and the defendant did not "accept" the "offer" by

paying severance pay to other employees. The absence of an offer makes it impossible to construe the mute practice as acceptance. The normal understanding of severance pay (when not provided for in a written plan), as of bonuses, is that it is at the discretion of the employer; there is nothing here to upset that understanding.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*