Howard **GLICKMAN**

v.

**UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA, INC.,** d/b/a Aetna U.S. Healthcare, Inc.

No. CIV.A.02–8928.

United States District Court, E.D. Pennsylvania.

April 22, 2003.

Thomas More Marrone, Feldman, Shepherd, Wohlgelernter & Tanner, Philadelphia, PA, for Plaintiff.

Raymond A. Quaglia, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM

DALZELL, District Judge.

Under Pennsylvania's Quality Health Care Accountability and Protection Act,

managed care plans must create a three-tiered grievance process by which enrollees can challenge denials of payment for health care services. We here examine plaintiff's motion for remand in some detail because the unusual facts of this case raise an issue of first impression: For purposes of determining whether ERISA governs the managed care plan, at what point in this state-mandated grievance process does the denial of benefits actually occur?

*Factual and Procedural Background*

Plaintiff Howard Glickman is president, treasurer, secretary, and sole shareholder of U.S.A. Pizza Buffet, Inc. ("U.S.A. Pizza"), a restaurant in Northeast Philadelphia. Defendant United States Healthcare Systems of Pennsylvania, Inc. ("Aetna") entered into a group health care plan agreement ("Plan") with U.S.A. Pizza that took effect on February 15, 2002. All U.S.A. Pizza employees working at least thirty hours a week are eligible for the Plan. At the time the Plan went into effect, U.S.A. Pizza had seven employees, but only Glickman and another worker, Abdel Jalal Asdairi, satisfied the eligibility requirement. Both enrolled in the Plan from the outset.

Glickman subsequently sought coverage under the Plan for the surgical correction of his twelve-year-old son's bilateral gynecomastia.[1] Aetna denied coverage for this procedure on April 9, 2002. After unsuccessfully pursuing his claim through Aetna's internal grievance process, Glickman invoked his rights under the Pennsylvania Quality Health Care Accountability and Protection Act ("Quality Health Care Act"), 40 Pa.C.S. § 991.2162, and demanded an external review of Aetna's decision. While the external review was pending, U.S.A. Pizza terminated Asdairi's employment on August 1, 2002. After that date, Glickman was the only remaining employee eligible to participate in the Plan[2], and he has alleged that, contrary to Aetna's claim, none of his other employees will *ever* become eligible to participate. *See* Second Glickman Aff. ¶¶ 3–4, 6.[3] In other

1. Gynecomastia is the abnormal enlargement of the male breast. *See* Compl. Ex. H, at 2.

2. On October 17, 2002, Aetna retroactively terminated Asdairi's coverage. Aetna contends that Glickman did not seek Asdairi's removal from the Plan until October 15, 2002, when he requested that the termination of coverage be made retroactive to August 14, 2002. Aetna has suggested that Glickman took these steps to insulate this case from removal to federal court, and it has also questioned whether Mr. Asdairi was in fact terminated in August, 2002. *See* Def.'s Mem. at 6.

In a reply brief, Glickman has substantiated his claim that Asdairi should not be deemed a Plan participant after August 1, 2002. Asdairi's payroll records for the third and fourth quarters of 2002 show that he received his last paycheck on August 8, 2002. Glickman has averred that this check covered Mr. Asdairi's final six days of employment in July. Glickman has also averred that he first notified Aetna in August that Asdairi would no longer be participating in the Plan and that the Aetna representative instructed him to circle Mr. Asdairi's name on his next bill and deduct his premium from the amount due. Glickman claims that he fully complied with these instructions but that Aetna did not remove Asdairi from its rolls until Glickman complained in October. Upon review of the record, we credit Glickman's representation that he first attempted to remove Asdairi from the Plan in August, 2002.

3. We pause to comment on the ambiguity in Glickman's representations concerning the eligibility of U.S.A. Pizza's current employees. As we note below, ERISA defines a "participant" as, *inter alia*, an employee who "may become" eligible to receive benefits. 29 U.S.C. § 1002(7). Glickman has averred that he

read Aetna's lawyer's statement that "USA Pizza Buffet has any number of employees other than plaintiff who are or may become eligible for coverage under the USA Pizza Buffet plan." This is false. Since the plan's inception, the USA Pizza Buffet plan has never employed any non-family employ-

words, Aetna appears to have saddled itself with a group plan that now covers only one family.

On August 21, 2002, the plastic surgeon who conducted the external review rendered his decision. Although he found that the surgical procedure would be medically appropriate, he concluded that "[t]his case comes down to an interpretation of the contract" and that the contract expressly excludes the surgical correction of gynecomastia. *See* Compl. Ex. H at 2–3.

Glickman then filed a complaint against Aetna in state court asserting claims for breach of contract and statutory bad faith. Aetna removed the case to federal court on December 6, 2002, and Glickman then filed the motion to remand now before us.

*Discussion*

The parties agree that the removal of this case, which involves non-diverse parties and state-law claims, is only proper if the Plan is an "employee welfare benefit plan" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that causes of action within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), are removable to federal court). In relevant part, ERISA defines an "employee welfare benefit plan" as

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan ... was established or is maintained for the purpose of providing for its participants or their beneficiaries ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness ....

29 U.S.C. § 1002(1). ERISA further defines a plan "participant" as "any employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ...." 29 U.S.C. § 1002(7). Department of Labor regulations, in turn, provide that the plan must involve "at least one employee other than the corporation's sole owner [and his or her spouse] to satisfy the 'participant' requirement." *Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 448 (4th Cir.1993), *citing* 29 C.F.R. §§ 2510.3–3(b) & 2510.3–3(c)(1). Finally, our Court of Appeals has confirmed that the regulations governing sole owners apply to sole shareholders. *Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96, 101 n. 3 (3d Cir.1996); *see also Leckey v. Stefano*, 263 F.3d 267, 270–72 (3d Cir.2001).

Given these definitional guideposts, there is no question that ERISA governed the Plan at least until August 1, 2002, because both Glickman and Asdairi worked more than thirty hours a week and were thus eligible to participate. By the time

---

ee who worked at least 30 hours per week (other than Mr. Asdairi) ....
Second Glickman Aff. ¶ 6.

It is clear from the affidavit that, after Asdairi's termination, no employee other than Glickman works at least thirty hours per week. It is less clear whether any U.S.A. Pizza employees are "participants" in the sense that they may, in the future, receive the opportunity to work at least thirty hours per week and thereby become eligible to join the Plan. If the burden were on Glickman, this ambiguity might be significant. However, on

a motion for remand, the "party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists," *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), and "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand," *Burns v. Windsor Ins. Co.* 31 F.3d 1092, 1095 (11th Cir.1994). For the purposes of resolving this motion, we therefore presume that, at all relevant times, no U.S.A. Pizza employee enjoyed the prospect of becoming eligible to participate in the Plan.

the external reviewer rendered his decision, however, Asdairi had been terminated and only Glickman, a sole shareholder, remained a participant within the meaning of ERISA. The fate of this case in federal court therefore hinges on whether Asdairi's departure affected the ERISA status of the Plan.

Aetna concedes that we must determine the Plan's ERISA status on the date Glickman was denied coverage for his son's operation rather than at some other time, such as the Plan's inception. *See* Def.'s Mem. at 11, *quoting Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees,* 974 F.2d 391, 398 (3d Cir.1992) ("ERISA ... refers to the surrounding circumstances to determine if a plan existed at the time benefits were denied."); *see also In re Lowenschuss,* 171 F.3d 673, 680 (9th Cir.1999) (rejecting the argument that a plan cannot lose its ERISA status merely through the attrition of all participants apart from the business owner).[4]

Not surprisingly, however, the parties sharply dispute when the denial of benefits actually occurred. Aetna contends that the denial of coverage took place at the conclusion of the internal grievance process. Glickman, however, asserts that the denial of coverage occurred when the external reviewer rendered his decision on August 21, 2002.

Based on the structure and terms of the Quality Health Care Act as well as the

Plan's Group Agreement, we conclude that the external review was so integral to Aetna's decision (by statutory necessity and contractual design) that the denial of coverage took place at its conclusion rather than at the end of the internal grievance process.

We begin with Pennsylvania's statutory scheme. The Quality Health Care Act requires the managed care plan to "establish and maintain" both internal and external grievance processes.[5] 40 Pa.C.S. §§ 991.2161(a) & 991.2162(a). Although the Commonwealth's Insurance Department assigns the external reviewer in each case, the managed care plan itself is responsible for providing the external reviewer with "all written documentation regarding the denial, including the decision, all reasonably necessary supporting information, a summary of applicable issues and the basis and clinical rationale for the decision ...." Section 991.2162(c)(2). Most significant of all, the statute requires the managed care plan to bear all but $25.00 of the costs associated with the external grievance. Section 991.2162(c)(7) & (e).

In sum, the statute compels managed care plans to assist enrollees in pursuing external grievances and then bear all but a trivial share of the cost. These provisions virtually eliminate any considerations, such as cost or inconvenience, that might otherwise dissuade an enrollee from pursuing an external review.[6] And given the ease

---

**4.** We note that in *Leckey* our Court of Appeals raised but declined to resolve the general issue of "when a plan's ERISA status ought to be determined" as well as the more specific question of whether a plan can lose its ERISA status by attrition. 263 F.3d at 269 n. 3. In the absence of more helpful appellate guidance, we agree with Aetna that we should rely on the Court of Appeals's earlier decision in *Henglein.*

**5.** The internal grievance system must have two tiers and offer an expedited process. Section 991.2161(a). An enrollee must file an external grievance with the managed care plan within fifteen days of an adverse decision at the second level of internal review. Section 991.2162(c)(1).

**6.** Indeed, from the enrollee's point of view, cost-benefit analysis unequivocally encourages an external review. The enrollee must gamble a mere $25.00 on the chance that the

with which an enrollee can procure an external review in Pennsylvania, a managed care plan cannot reasonably regard the conclusion of its internal grievance process as the final (pre-litigation) word on whether a particular procedure is covered under the plan.

Our analysis applies with even greater force in this case because Aetna's standard form Group Agreement compels enrollees to use the external grievance process before seeking redress for any matter relating to the Plan in any forum. The Group Agreement's "Exhaustion of Process" clause appears after the clauses describing the internal and external grievance processes. It provides:

> The foregoing procedures and process are mandatory and must be exhausted prior to:
>
> 1. any investigation of a complaint by the Department of Health; or
>
> 2. the filing of a complaint with the Department of Health; or
>
> 3. the establishing of any litigation or arbitration, or any administrative proceeding regarding either any alleged breach of the Group Agreement or Certificate by HMO, or any matter within the scope of the grievance resolution process of any complaint, grievance or grievance appeal.

Def.'s Mem. Ex. D, at 36.

In view of this contractual term, which would preclude even a plain-vanilla breach of contract claim prior to the completion of the external review, Aetna cannot plausibly claim that it is a mere statutory imposition, wholly extrinsic to the insurer's own decision-making process.

For these reasons, we conclude that the denial of coverage took place on August 21, 2002, when the external reviewer announced his decision. On that date, the only person who was or might become eligible to participate in the Plan was Glickman, who is U.S.A. Pizza's sole shareholder. The Plan was therefore not governed by ERISA on the relevant date, and thus we shall remand this case to the Court of Common Pleas.

### ORDER

AND NOW, this 22nd day of April, 2003, upon consideration of plaintiff Howard Glickman's motion to remand (docket entry #3), defendant United States Healthcare Systems of Pennsylvania, Inc.'s response, and Glickman's reply, and in accordance with the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiff's motion to remand is GRANTED pursuant to 28 U.S.C. § 1447(c);

2. This case is REMANDED to the Court of Common Pleas of Philadelphia County, Pennsylvania; and

3. The Clerk of Court shall CLOSE this case statistically.

---

external reviewer will overturn the managed care plan's decision and award coverage worth tens, or even hundreds, of thousands of dollars. This is a bet no rational participant would fail to make.