

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2001

# Henglein v. Colt Ind Operating

Precedential or Non-Precedential:

Docket 00-2529 & 00-2746

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Henglein v. Colt Ind Operating" (2001). *2001 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 10, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-2529 & 00-2746

GEORGE W. HENGLEIN; L. C. ALBACKER; R. B.
ANDREWS; R. L. APPELDORN; R. H. ASHENBAUGH;
A. L. AUSTIN; J. W. BAGOSI; J.D. BALSER; A.
BARRASSO; J. O. BAUER; E. E. BEST; H. W. BIG LEMAN;
C. R. BLAZIER; J. P. BRESSANELLI; G. D. BROW N; F. C.
BUCHHOLZ; E. C. CALVIN; R. R. CAMPBELL; P. D.
CASTELLANO; J. L. CERASI; E. CHAPMAN; S. CHRISTY;
T. M. COSTELLO; C. A. DAUKA; A. J. DECOSTA; M. G.
DEGRANDE; A. S. DICCIO; A. P. DIMARZIO; C. J.
DIMARZIO; R. J. DOUGHERTY; M. DRUGA; E. P. ERATH;
E. P. FAHNERT; H. FARRINGTON; M. FERLAINO; R. D.
FEYDO; E. R. FINGER; J. N. FLARA; N. E. FRED ERICK;
J. P. FRENN; R. E. FRONKO; L. L. GIBBS; W. L.
GLEASON; L. E. GORDON; R. W. GOTT; J. E. GRIMM;
P. E. GRUBBS; E. R. GUERRA; A. J. GULUTZ; J. T.
HAAF; J. D. HAMACHER, JR.; P. J. HANNON; R. M.
HANSEN; M. I. HARPHAM; D. H. HELDMAN; J. K. HILE;
R. S. HOGSETT; R. T. HOPPER; H. M. HOWELL; W. M.
HYAMS; J. M. JANKE; C. L. JOBE; K. H. JOHNS;  R. O.
JOHNSON, JR.; E. T. JONES; R. KAO; D. P. KERR, JR.;
P. A. KEYS; R. W. KNALLAY; E. E. KNAPEK; W. J.
KOFALT; S. W. KOHLER; T. KOMINITSKY; T. R. KRUPA;
P. R. KULLEN; J. R. KUNDICK; W. LAKE; D. F. LAVENE;
T. T. LEHMANN; R. H. LEWIS; R. A. LIPPERT; W. R.
LIVINGSTON; J. H. LUTTON; A. J. LYNN; D. B. MCCLAIN;
P. F. MCNICOL; E. L. MARSH; F. S. MATSUKAS; H. J.
MERCER; A. R. MIDDLETON; M. MITROVICH; M. A.
MOLCHAN; R. A. MONTGOMERY; R. T. MORELLI; A. N.
MORRISON; H. MRAUNAC; M. R. MUCKIAN; C. W.
MURRAY, III; C. J. MYERS; L. V. NAGLE; D. A. NOBERS;
J. A. NUZO; E. ORDICH; W. H. ORR; T. H. PARSONS;
A. J. PASKO; H. S. PEASE, III; G. J. PESCION ; G. V.
PETERSON; J. J. POPP; G. P. PORTO; G. POSTICH; D. E.

POWELL; R. W. PRENTICE; J. V. PRESUTTI; W. C.
PRICE; L. E. RAYKOVICS; T. R. REED; J. W. REIDER;
J. J. ROSE; A. J. ROSEPILLER; C. S. RUSSELL;  K. E.
SANDERS; M. A. SARVER; P. K. SCHAKE; J. W.
SCHOLTZ; A. H. SCHELINE; M. L. SHERRY; F. R.
SHUSS; W. W. SIMPSON; A. E. SIX; J. E. SMITH ; E. H.
SPAZIANI; W. H. STEPHENS; C. D. STROSNIDER; J. F.
SUFFOLETTA; H. L. TAYLOR; K. E. THOMAS; F. S.
THORNBERRY, JR.; J. R. TICE; D. A. TOWNLEY; R.
TRBOVICH; R. T. TURNER; H. B. VAN FOSSEN; R. R.
VLAH; A. VRANES; S. VRANES; D. W. WARE; K. G.
WASSMAN; G. T. WEEKLEY; E. M. WERRIES; D. L.
WESTFALL; J. A. WHITEHEAD; R. J. WHITTEN; C. K.
WILDMAN; T. WILLIAMS, JR.; T. H. WILLS; A.  J. YANNI;
L. H. YOUNG, JR.; R. C. YOUNG; H. F. YUTE,
        Appellants/Cross-Appellees

v.

COLT INDUSTRIES OPERATING CORPORATION, informal
plan for plant shutdown benefits for salaried employees
and Colt Industries Operating Corporation Plan for
maintaining benefits for salaried employees in parity with
benefits granted to union represented employees.
        Appellee/Cross-Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 86-cv-02021)
District Judge: Honorable Donald J. Lee

2

Argued May 3, 2001

Before: NYGAARD, WEIS, Circuit Judges, and
KAUFFMAN,* District Judge

Filed August 10, 2001

        James J. Ahearn (ARGUED)
        825 B Morewood Avenue
        Pittsburgh, Pennsylvania 15213

        Attorney for Appellants/
        Cross-Appellees

        Mark G. Arnold (ARGUED)
        Husch & Eppenberger, LLC
        100 North Broadway, Suite 1300
        St. Louis, Missouri 63102

        William H. Powderly, III, Esq.
        Metz Schermer & Lewis, LLC
        11 Stanwix Street
        Pittsburgh, Pennsylvania 15222

        Attorneys for Appellee/
        Cross-Appellant

OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we determine that a ruling on a statute of
limitations issue in a declaratory judgment action had
preclusive effect despite the fact that other requests for a
declaration were denied because of unresolved factual
matters. As a consequence, the District Court erred in
applying a different limitations period in a related ERISA

_____

* The Honorable Bruce W. Kauffman, United States District Judge for the
United States District Court for the Eastern District of Pennsylvania,
sitting by designation.

3

case and barring the claims of some of the employee plaintiffs. We also conclude that the District Court properly found that an ERISA plan was in existence and provided benefits for employees at the time of a plant shutdown. Accordingly, we will reverse in part, and affirm in part.

Plaintiffs are former non-union salaried employees of Crucible, Inc. who worked at one of the company's steel manufacturing facilities in Pennsylvania that closed in 1982. Most of the plaintiffs were at the Midland plant, and most were terminated that year, with a few remaining in their positions until as late as 1986. In 1982, Crucible changed its name to Colt Industries Operating Corporation, which today is a dormant corporation. We described in detail the background facts leading up to this litigation in Henglein v. Informal Plan for Shutdown Benefits for Salaried Employees, 974 F.2d 391, 395-96 (3d Cir. 1992) ("Henglein I"), and need not repeat them here.

The employees first filed suit against the employer in August, 1983, presenting a number of claims. Those for shutdown benefits were dismissed on appeal because the complaint failed to name the proper defendant. Schake v. Colt Indus. Operating Corp., No. 85-3381 (3d Cir. May 14, 1986).2

In September 1986, the employees filed the present action ("Henglein") under ERISA section 502(a)(1)(B), 29 U.S.C. S 1132(a)(1)(B), against two plans alleged to be administered by Colt, an "Informal Plan" and a"Parity Plan." The complaint alleged that plaintiffs were entitled to shutdown benefits pursuant to an Informal Plan that was created by Crucible's 1962 plan, and amended by 1968 and

_____

2. The closing of the Crucible plants generated an unusual amount of appellate litigation. See Schake v. Colt Indus. Operating Corp., No. 85-3381, (3d Cir. May 14, 1986); Anthuis v. Colt Indus. Operating Corp., 789 F.2d 207 (3d Cir. 1986); Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan, 854 F.2d 1516 (3d Cir. 1988); Frank v. Colt Industries, Inc., 910 F.2d 90 (3d Cir. 1990); Henglein I, 974 F.2d 391 (3d Cir. 1992); Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, No. 93-3219, (3d Cir. Jan. 13, 1994) ("Henglein II"); Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees , No. 94-3074, (3d Cir. Sept. 26, 1994) ("Henglein III").

4

1969 documents. In addition, some of the employees sought a $400 monthly supplement under the so-called Parity Plan.

As described in the complaint, the Informal Plan provided plant closing benefits for older, long-time employees who had not yet qualified for 30-year pension benefits under the company's Formal Plan. These supplemental benefits were to be paid monthly until the recipient reached the age when Social Security benefits became available. The claim for Parity Plan benefits was based on management's alleged promise to equalize plant shutdown benefits between union and non-union employees.

Rather than answering the employees' complaint, Colt in its capacity as administrator of the putative Plans, filed a declaratory judgment action seeking rulings that the Informal Plan and Parity Plan did not exist, and the employees' rights to a pension were governed solely by the Formal Plan in effect in 1982. The District Court stayed the employees' action and proceeded with the declaratory judgment.

In November 1988, the District Court ruled that there was no Parity Plan, and that the statute of limitations for the employee claims was six years. Colt v. Frenn , No. 86-2642 (W.D. Pa. Nov. 30, 1988). Colt's counts seeking declarations of the non-existence of other benefit plans were dismissed because unresolved material issues of fact precluded summary judgment. Id. Neither party appealed.

The employees' suit (Henglein) then resumed. After taking testimony, the District Court ruled that it lacked subject matter jurisdiction because the employees had failed to prove that an Informal Plan existed under ERISA. On appeal we reversed and remanded for fact-finding to determine whether the alleged Informal Plan straddled the enactment of ERISA. We also held that the employees were collaterally estopped from raising the Parity Plan matter because of the ruling in the Frenn declaratory judgment. Henglein I, 974 F.2d at 402.

Extensive District Court proceedings that followed resulted in two more appeals to this Court. Henglein II, No. 93-3219 (3d Cir. Jan. 13, 1994); Henglein III , No. 94-3074

(3d Cir. Sept. 26, 1994). In both instances, we remanded for additional consideration by the trial court. During the pendency of the third appeal, the district judge who had presided over the litigation retired; on remand another judge was assigned the case. Following a bench trial, the second judge filed extensive findings of fact and conclusions of law, and entered the judgment now on appeal. We will summarize the District Court's findings.

Evidence of the employer's representations and conduct extended from before the 1975 effective date of ERISA up until the time the claims arose in 1982. In 1968 Crucible adopted an "Early Severance and Disability Program." This document and a memorandum were distributed to the employees. The 1968 Plan was amended in 1969 by the "Hardship Retirement Guidelines," which, however, was not generally distributed to the employees. In 1972, a board of directors resolution purported to rescind the 1968 Early Severance And Disability Programs. No notice of this action was given to the employees.

In 1972, Crucible amended and rewrote its retirement plan entitled "Crucible Inc. Retirement Plan for Eligible Salaried Employees." It was printed in booklet form and circulated to all salaried non-union employees. Various amendments were made by the "1975 Salaried Retirement Plan," which the employees received in 1976. Those booklets failed to contain any statement that the employees' benefits were limited to those described therein.

Crucible never issued to its employees in general any written notice that the 1968 and 1969 Early Severance and Disability Benefit Programs had been rescinded. In a 1973 memorandum, E. A. March, Group Vice President of Crucible, Inc. wrote to division presidents, controllers, personnel directors, and the retirement board informing them that "there is no `Informal Pension Plan' to which new names can be added." When advising the vice president of Employee Relations for the Midland plant of this news, March directed, "I don't want anyone to talk about it."

Three Crucible vice presidents who served as members of the executive committee were never informed about the cancellation of plant shutdown compensation for salaried

employees. John Vensel, president of Crucible's Alloy Division at Midland, Pennsylvania, testified to his belief that shutdown benefits for salaried employees were in existence in 1982. Vensel also told the employees he supervised that the benefits were available.

At various meetings during 1969 through 1982, senior members of Crucible management told salaried employees that their benefits would always equal or exceed in value those extended to union members. The employees believed this meant they would receive additional compensation in the event of plant shutdown.

In conformance with its factual findings, and following this Court's legal analysis in the three appeals, the District Court concluded that the Informal Plan for Shutdown Benefits for Salaried Employees was a defined benefit employee plan at the time of the shutdown in 1982, and was governed by the 1968 "Early Severance and Disability Benefit Plan" as amended by the 1969 Hardship Benefits Program. The Court also observed that the employees met the requisite age and service criteria.

However, in considering an issue not raised in any of the appeals, the Court concluded that the applicable statute of limitations was three years. As a consequence the claims of all but six of the 164 plaintiffs were time-barred.

In accordance with the parties' stipulation, the claims of the six individuals were referred to the Plan administrator for calculation of the benefits due. The Court approved the awards to five of the employees, but disagreed with that of the sixth employee, E. P. Fahnert, who was granted monthly payments to age 65. Reviewing the administrator's calculations, the District Court focused on the 1969 Plan's use of the term "life income" and modified Mr. Fahnert's award, directing that the payments continue for his lifetime.

In reviewing the claims to the Parity Plan benefits, the District Court reaffirmed the prior dismissal in accordance with the directive in Henglein I.

Both parties have raised substantial issues on this appeal. The employees challenge the ruling on the three

7

year statute of limitations, contending that the six year period set out in Colt v. Frenn controls. They also renew their claims for "parity payments" and assert that the Plan administrator used an inappropriate basis for determining the amounts due the successful plaintiffs.

The Plans defend the three year statute of limitations ruling, but in their cross-appeal contend that the District Court erred in allowing Fahnert a "double recovery." The Plans also challenge the calculation of the benefits payable.

I.

This case comes to us after a non-jury trial. We review the findings of fact under the clearly erroneous standard, Fed. R. of Civ. Proc. 52(a), and the conclusions of law de novo. Gregoire v. Centennial School Dist., 907 F.2d 1366, 1370 (3d Cir. 1990). The statute of limitations is the predominant issue in this case, and we will therefore address it first.3

The parties agree that ERISA contains no statute of limitations applicable to the controversy at hand, and conducted the litigation on the premise that the court should look to the most analogous state provision, in this case that of Pennsylvania.4 According to the Plans, the Wage Payment and Collection Law, Pa. Stat. Ann. tit. 43, SS 260.1–12, fills the gap. That statute defines wages to

_____

3. The plaintiffs in Henglein were the same as those who had previously been parties in the Schake case, which was filed within the three year limitation. Had the Plans been joined in the Schake case after this Court had dismissed the relevant counts in that litigation, the relation back provisions of Federal Rule of Civil Procedure 15(c) would have eliminated the statute of limitations problem. Plaintiffs, however, chose to file this
separate Henglein case more than the three years after the 1982 plant closings.

4. We therefore do not discuss the doctrine of laches under the law of trusts. See Firestone Tire & Rubber Co. v. Bruch , 489 U.S. 101, 110–11 (1989) ("ERISA abounds with the language and terminology of trust law. . . . In determining the appropriate standards of review for actions under S 1132(a)(1)(B), we are guided by principles of trust law."). It appears that
the overwhelming majority of Courts of Appeals apply a statute of limitations in claims under ERISA S 502(a)(1)(B).

8

include fringe benefits due under ERISA plans, and establishes a three year statute of limitations. Pa. Stat. Ann. tit. 43, SS 260.2a, 260.9a. The Plans cite Syed v. Hercules Inc., 214 F.3d 155, 159-62 (3d Cir. 2000), Gluck v. Unisys Corp., 960 F.2d 1168, 1181 (3d Cir. 1992), and Vernau v. Vic's Market, Inc., 896 F.2d 43, 45 n.3 (3d Cir. 1990), as supporting a three year limitations period for this case. The Plans argue that despite its ruling in Frenn, the District Court was obliged to apply the shorter statute of limitations in the Henglein suit.

As noted earlier, the declaratory judgment action was brought by Colt as Plan administrator, against Frenn and one other employee, both named as plaintiffs in the then-pending Henglein action. The complaint sought a declaration that the Informal Plan and the Parity Plan did not exist, and, therefore, the Henglein case should be dismissed. In response, the employees sought summary judgment on the basis that the Informal Plan and Parity Plan were in effect in 1982. Both parties to the declaratory judgment suit were represented by the same attorneys who appeared in the Henglein case. There can be no question about privity or identity of issues in the two cases.

As we mentioned previously, the first judge made several rulings in the declaratory judgment action. Finding that a Parity Plan did not exist, he entered judgment against the employees on that claim. Whether the Informal Plan was properly terminated in 1972, and whether it existed after ERISA was enacted, however, depended upon disputed issues of fact. Therefore, the Court denied the cross-motions for summary judgment and dismissed the requests for declarations on those points.

The district judge then turned to the question of the employees' timeliness in filing the Henglein case: "Finally, [Colt] contends that the Henglein action is time-barred." After some discussion the judge concluded that "the accrual of the statute of limitations did not begin until 1982." Next, he determined that the Pennsylvania six year statute of limitations for actions on contracts was applicable. "Here, the [employees] initially brought the

9

Henglein suit in 1986. Therefore, the [employees] properly brought this suit within the applicable limitations period."5

II.

Although the Plans did not take an appeal from the Frenn declaratory judgment, they contend that the ruling on the statute of limitations issue should not be given preclusive effect. They correctly identify the standard requirements for collateral estoppel, more generally, termed issue preclusion: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Raytech Corp. v. White , 54 F.3d 187, 190 (3d Cir. 1995); see also Restatement (Second) of Judgments S 27 cmt. j (1982); Henglein I , 974 F.2d at 402; Temple University v. White, 941 F.2d 201, 212 (3d Cir. 1991); Arab African Int. Bank v. Epstein, 958 F.2d 532, 535 (3d Cir. 1992); Gregory v. Chehi, 843 F.2d 111, 121 (3d Cir. 1988).

Preliminarily, we observe that much of the Plans' argument rests upon a concept of "finality" that is unduly rigid. In Dyndul v. Dyndul, 620 F.2d 409 (3d Cir. 1980) (per curiam), we commented that " `[f]inality' for purposes of issue preclusion is a more `pliant' concept than it would be in other contexts." Id. at 412 (footnote omitted). We quoted approvingly from Judge Friendly's opinion in Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir. 1961): " `Finality' in the context here relevant may mean

_____

5. The ruling on the statute of limitations, although quite forthright in the memorandum opinion of the District Court, was not repeated in the judgment itself. The parties have not raised the issue of non-compliance with Federal Rule of Civil Procedure 58, requiring that judgments be set forth on separate documents. We merely note the point to observe that better practice would have been to follow the rule. In any event, violations of Rule 58 are not jurisdictional and may be waived. Bankers Trust Co. v. Mallis, 435 U.S. 381, 384 (1978) (per curiam); see also Buck v. U.S. Digital Communications, Inc., 141 F.3d 710, 711 (7th Cir. 1998) (if terms of declaratory relief appear in the opinion, final decision has been reached); Metzl v. Leininger, 57 F.3d 618, 619-20 (7th Cir. 1995).

10

little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Id. at 412 n.8.

In In re Brown, 951 F.2d 564, 569 (3d Cir. 1991), we made the point clearly: "[u]nlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." We also cited section 13 of the Second Restatement of Judgments, which states that "for purposes of issue preclusion, . . . `final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Id.; see also Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997); Restatement (Second) of Judgments S 27 cmt. k.

We need not, however, rely on those applications of the "finality" factor because here the basis is an even more compelling one, the actual entry of a final judgment.

A. Appealability

In Henglein I, we observed that the employees did not appeal Frenn's unfavorable ruling on the Parity Plan. 974 F.2d at 402. Because they did not do so, we held that "the district court's ruling that a Parity Plan did not exist was a final judgment on the merits," and collateral estoppel barred further litigation on that issue. Id.

Despite the clear language in Henglein I, the Plans argue that they could not have appealed the Frenn judgment because the District Court's dismissal of the Informal Plan count based on unresolved factual issues was an interlocutory order. The Plans say also that they could not have appealed because the ruling on the Parity Plan was in their favor.

The Plans' arguments fail to appreciate the unique nature of a declaratory judgment action. In a case of actual controversy, the Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or

11

not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. S 2201.

Once a judgment disposing of all issues on which the parties sought a declaration is entered by a court, the case is ripe for appeal. Even if the court decides in its discretion that it will not entertain the case in any aspect whatsoever, that ruling is subject to appeal. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."); see also Exxon Corp. v. F.T.C., 588 F.2d 895, 900-02 (3d Cir. 1978).

Because it has discretion to decline jurisdiction over a declaratory judgment action in its entirety, it follows that a court may decide some of the issues raised and refuse to rule on others. The maxim that the greater includes the lesser applies; if the court may choose to rule on all or none of the issues presented, it may decide only those it finds appropriate for a declaration.

Once a district court has ruled on all of the issues submitted to it, either deciding them or declining to do so, the declaratory judgment is complete, final, and appealable. Nothing remains for the trial court to do and the case is at an end in that forum. See Catlin v. United States, 324 U.S. 229, 233 (1945).

We would not be understood to say, however, that every ruling in a declaratory judgment is immediately appealable. In Peterson v. Lindner, 765 F.2d 698 (7th Cir. 1985), the trial judge entered an order on one phase of a declaratory judgment action, but specifically left open significant issues relating to damages and other relief. Moreover, he did not enter a formal judgment. Id. at 701-02. In those circumstances, the Court of Appeals held that the order was interlocutory and non-appealable. Id. at 702-04. Similarly, in Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 742 (1976), the Supreme Court noted that an order establishing liability, even if considered as a

12

declaratory judgment, was not final where the trial court had not ruled on the injunction and damages that had been requested. That, however, is not the situation here where the court issued a judgment and a ruling on every issue submitted.

The normal civil action differs from the declaratory judgment in that courts deciding the latter are not required to adjudicate the ultimate dispute between the parties. Consequently, the disfavor generally shown to appeals from partially-dispositive orders in the usual civil action, see, e.g., Fed. R. of Civ. Proc. 54(b), is not present once a declaratory judgment has been entered. In this sense, some "loose ends" in the underlying controversy that would negate finality for appellate purposes in most civil actions, do not have that effect in the declaratory judgment setting. See also Restatement (Second) of Judgments S 33 cmts. b, e (noting that if declaratory judgment is valid and final, it is conclusive with respect to matters declared).

In Frenn, the District Court could have chosen to decide all of the issues, including resolution of the contested factual issues on the existence of the Informal Plan. It is understandable that the Court did not do so, more than likely believing that the disputed factual matters were at the heart of the Henglein case and would be better resolved in that litigation.

The Plans' arguments dance nimbly around the fact that the determination of the statute of limitations was adverse to them, and was independent of the ruling on the unresolved factual disputes. If, in the main Henglein case, the Plans had moved for summary judgment alleging non-existence of the Informal Plan, an order denying the motion because of the presence of factual disagreement would have been interlocutory and non-appealable order. But since the Plans chose to use the declaratory judgment vehicle, they are bound by its differing characteristics as to finality.6

_____

6. The fact that a declaratory judgment may be used by a party to, in effect, make an end run around the non-appealability of otherwise interlocutory orders in existing litigation may be a factor counseling a district court to decline to entertain such a case. See James W. Moore,

13

B. Necessity

Generally, to have preclusive effect, the challenged ruling must be necessary to the prior judgment. Multiple issues are frequently presented in declaratory judgment actions, however, and on appeal all of those decided lie within the scope of review. The Plans, nonetheless, contend that the statute of limitations decision was entirely irrelevant and unnecessary to the ruling on the Informal Plan because "some plaintiffs had filed timely claims even under the three year statute."

The fact that the 158 employees would have been barred by a shorter period demonstrates that the limitations question was a substantial one for both parties. In addition, the issue was separable from the others presented, and potentially dispositive. Therefore, the decision to resolve the question in the declaratory judgment was appropriate. It does not matter if the limitations period was irrelevant in part to some other phases of the case.

The necessity principle has diminished importance in the declaratory judgment setting. Wright, Miller and Cooper make the reasoning for this clear:

> "Multiple findings also may figure in declaratory judgment actions. Since the very purpose of declaratory relief is to achieve a final and reliable determination of legal issues, there should be no quibbling about the necessity principle. Every issue that the parties have litigated and that the court has undertaken to resolve is necessary to the judgment, and should be precluded."

18 Wright, Miller & Cooper, Federal Practice & Procedure S 4421 (1981).

In this case, each individual ruling on the multiple issues presented was subject to appeal and preclusive effect.

_____

12 Moore's Federal Practice S 57.42[3] n.36 (Matthew Bender 3d ed. 2001) (piecemeal litigation not favored). We are not called upon to decide whether the District Court should have refused to decide the declaratory judgment action in view of the pending Henglein case in the same court raising the same issues.

14

Because the Plans were free to appeal the ruling on the six year statute of limitations, and having failed to do so, they are bound by it, and precluded from attempting to secure a more favorable ruling at this late date.

## C. Actually Litigated

The Plans' final objection -- that the issue was not actually litigated -- is belied by the District Court's specific statement in its Memorandum Opinion, "[f]inally [Colt] contends that the Henglein action is time-barred . . . ." The opinion then discussed both the question of when the cause of action accrued and the choice of the most analogous state limitation period. We have no doubt that the statute of limitations was contested and was done so at the instance of Colt as administrator of the Plans.

## D. Unmixed Question of Law

As a final matter, we address briefly an exception to normal application of issue preclusion called the"unmixed question of law" reservation, articulated in United States v. Moser, 266 U.S. 236, 242 (1924). There, the Court wrote that res judicata "does not apply to unmixed questions of law." Id.; see Restatement (Second) of Judgments S 28(2).

This exception has been discussed by courts, but none has yet delineated its boundaries very well. United States v. Stauffer Chem. Co., 464 U.S. 165, 170 (1984). Significantly, the Supreme Court has "had no trouble finding[the exception] inapplicable [where there is] close alignment in both time and subject matter" between the two cases. Id.

Because the declaratory judgment addressed the same facts and claims between the same parties, there was precise alignment between the decision in Frenn  and the pending Henglein case. To recognize an exception in these circumstances would eviscerate the doctrine of issue preclusion.

We conclude, therefore, that the holding in Frenn precluded the Henglein parties from relitigating the six year statute of limitations. Consequently, the second judge erred in subsequently holding that the employees' claims in

15

Henglein were time-barred by the three year statute of limitations.

III.

Because the District Court concluded that a three year period applied, it had no occasion to address the question of whether a group of employees who joined the suit after 1988 were barred by the six year statute of limitations.[7] The arguments as to these employees are the same, however, as were considered by the Court with respect to application of the three year limitation: that the statute of limitations was tolled, and that the application of the "continuing violation" theory would permit recovery. See Meagher v. International Ass'n of Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1988).

In its general discussion of the statute of limitations issue, the District Court concluded that there had been no tolling because at the time the employees were terminated, they were advised that they would not receive shutdown benefits. According to the Court, the statute of limitations began to run at the time of that notice. See Adamson v. Armco, Inc., 44 F.3d 650, 653-54 (8th Cir. 1995).

The employees also contended that the Plans were guilty of a continuing violation that extended the limitations period, but the Court concluded that that theory was not applicable.

The employees asserted that the Plans had an obligation to provide benefits through a series of monthly payments. In effect, such obligations are similar to installment agreements, or as some courts have termed them, "continuing contracts." An agreement to provide support for life may be termed a continuing contract, and so may be an

_____

7. Our review of the District Court's record discloses that the employees in this category are Ronald A. Montgomery, Michael Druga, William Hyams, David A. Nobers, Patrick F. McNichol, Alexander Urames, Henry B. Van Fossen, Ezra E. Vest, and Sylvester Vranes.

16

insurance policy to pay a monthly sum of money during a period of disability.[8]

The recurring question with such agreements is whether failure to pay each installment establishes a separate cause of action on each occasion a payment is withheld, or whether only one cause of action accrues for breach of the contract. Corbin on Contracts devotes substantial discussion to the subject and suggests simply that much depends on the circumstances. The treatise pithily comments, " `[a]ccrual of the cause of action' has not one eternal and exclusively correct meaning, ordained by God or by the legislature. There is no `infallible logic' that compels one application rather than another." 4 Arthur L. Corbin, On Contracts S 989, at 969 (1951).

In Vernau, this Court considered whether the statute of limitations barred a non-fiduciary claim for past due employer contributions to a pension fund. We concluded there was no tolling because plaintiffs had not been reasonably diligent. 896 F.2d at 45-47. The question of accrual in Vernau was raised only in connection with the tolling argument, but we noted that even if each delinquency gave rise to a separate claim, the plaintiffs were on "inquiry notice" that the terms of the plan had been breached. Id. at 46-47.

Two years after Vernau, we had occasion to again consider the proper statute of limitations in a section 502(a)(1)(B) ERISA claim. In Gluck, we noted that differing factual situations require consideration of varying periods, and that the controlling limitations period in Vernau should not be "rotely" applied. Gluck, 960 F.2d 1179-82. As an

_____

8. As we observed in Henglein I, the definition at 29 U.S.C. S 1002(1) does not point to state contract law to determine whether a plan existed at the time ERISA was enacted. 974 F.2d at 398. There is no inconsistency, however, once a plan is established in analogizing to contract law to determine whether a plaintiff may "recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. S 1132(a)(1)(B); see Tester v. Reliance Standard Life Ins. Co., 228 F.3d 372, 375 (4th Cir. 2000) ("In reviewing the terms of an ERISA plan, we are mindful that ERISA plans are contractual documents, and established principles of contract and trust law govern their interpretation.").

17

example, we commented on the incongruity of classifying future benefits as "wages" under the Pennsylvania Wage Payment and Collection Law, "because it provides no period of repose to an employer." Id. at 1181. A current claim for an ERISA violation affecting the retirement benefit of a hypothetical twenty year-old employee thus might accrue at age 65. Id. The opinion stated, "we are unwilling to open the door to a 48-year limitations period." Id .

Although neither of these cases squarely addressed the continuing violation theory, both pointed to problems inherent in such an approach. In the circumstances here, where there was an outright repudiation at the time the employees' services were terminated, it is reasonable to expect that the statute of limitations began to run at that point.9 We conclude that the District Court correctly rejected the tolling and continuing violation theories.

Other facts not revealed by the record before us, however, might be relevant in the late-comers' claims. The parties have not advised us of circumstances that may have affected timeliness of those claims. Moreover, because the District Court ruled that the three year limitation applied, it had no occasion to consider the status of the employees who joined the Henglein litigation after the six year period. We, therefore, must remand this particular matter to the District Court for resolution.

IV.

The language of the 1968 Early Severance Plan incorporated by reference the administrative provisions found in the text of the 1957 Restated Employee's Retirement Plan. Both documents refer to an entity called the "Retirement Board," which was directed to calculate benefits due. Based on that finding, the District Court instructed the Board to interpret the provisions of the Plans

_____

9. A similar result would obtain under trust law. See Restatement (Second) of Trusts S 219(2) (1959) ("The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust.").

18

in light of all the circumstances and such other evidence of the intention of the sponsor as was not inadmissable.

The employees do not object to the general standard set by the Court, but do challenge the findings that the applicable formulas were those found in the 1957 Plan. According to the employees, the Court should have looked to the Formal Plan in existence in 1982, which was more favorable to them.

The employees did not raise this issue in the District Court and, therefore, we need not consider it now. But we do observe that the 1968 and 1969 documents did not provide for incorporation of plan provisions that might exist at some future time.

Although the employees contend that the benefits due should take account of the inflation that occurred between 1972 and 1982, the District Court correctly pointed out that there was no basis in the plan provisions for such an adjustment. The courts are not at liberty to rewrite the terms of an ERISA plan. Ryan v. Federal Express Corp., 78 F.3d 123, 126 (3d Cir. 1996).

We conclude that the District Court properly approved the calculations by the Retirement Board based on the references to the 1957 Plan and we will affirm the awards granted to five of the employees. We do not, however, approve the ruling as to Mr. Fahnert.

V.

In reviewing the claim of E. P. Fahnert, the District Court rejected the retirement board's calculation. Because he had not reached the eligibility age, Mr. Fahnert was not eligible for early retirement under the 1957 Plan. Therefore, using the terms of the 1969 Severance Plan, the Board calculated his claim as a specified reduction of the normal monthly retirement benefit, to be paid from the time of the plant shutdown until he reached the age of 65.10  At that point he would be eligible for 100 percent of the normal retirement benefit and the severance benefit would cease.

_____

10. Specifically, benefits began the fourth month after shutdown and continued until the 3rd month following his 65th birthday.

19

The District Court noted that the 1969 Plan provided for a "life income starting immediately and actuarily reduced under the Restated [1957] Plan." Finding no ambiguity, the Court directed that Mr. Fahnert receive the severance benefits for the remainder of his life in addition to a pension under the Formal Plan. The net result would be that Mr. Fahnert would receive 100 percent of the normal pension at age 65, plus the actuarily reduced severance benefit.

The District Court's interpretation is inconsistent with the provisions of the plan documents when read as a whole. The 1969 Plan refers in several instances to the Restated Formal Plan of 1957, and it is apparent that the benefits under the two plans are to be coordinated.

In the event of plant shutdown, the 1969 Plan granted a beneficiary the right to an immediate actuarily reduced pension based on what he would have received at age 65. The Plan appendix sets out the amounts applicable for various age and service categories and further provides that a portion of early retirement pay is to be paid through the 1957 Restated Plan and part by the 1969 Plan.

The appendix explains that the percentages were calculated so that the employees would receive "exactly the same income" under the 1969 Plan that they would receive under the new vesting provisions. "[N]o additional value" was thus provided. "The only thing which the Guidelines provide for the employees in this portion of the table is a right to receive immediately an income which is the actuarial equivalent of the income which they would otherwise receive only at age 65."

Reduced to its simplest terms, the 1969 Plan provides that in the event of plant shutdown, a person in Mr. Fahnert's position would immediately receive a reduced pension until reaching the age of sixty-five, at which time the full permanent pension would commence. In Mr. Fahnert's case, the reduced pension was $396.89, which was 92.3 percent of his normal age sixty-five pension of $430 per month. Because he was not eligible for early retirement under the 1957 Restated Plan, none of those benefits could come from that source.

20

We conclude that, read in its entirety, the 1969 Plan's provision for a "life income" incorporates the interim payments followed by the normal retirement payments commencing at age sixty-five for the lifetime of the employee. That being so, the District Court's award of the supplemental benefits for life was not supported by the 1969 Plan's provisions. Accordingly, the Court's order in favor of Fahnert will be modified to reinstate the retirement Board's award in the amount of $53,183, representing the total amount of the severance pension he would have received until age 65. To this sum shall be added accrued interest.

VI.

In their brief, the employees devote considerable discussion to their alleged rights to supplemental payments under the so-called "Parity Plan." But that claim was rejected in Frenn and just as the employees are entitled to invoke issue preclusion on the statute of limitations count, so are they bound by the declaratory judgment on the Parity Plan claim. We made that point clear in Henglein I, directing that "[o]n remand the district court should dismiss the Parity Plan claim on the merits." 974 F.2d at 402. The employees have given us no basis to reconsider that ruling.

VII.

After a lengthy trial, and following the approach used in Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982), as we directed in Henglein I, Henglein II , and Henglein III, the District Court determined that the 1968 and 1969 Hardship Plans were in existence in 1982. When the plant shutdown occurred thereafter, the non-union salaried employees became entitled to benefits under those arrangements.

The Plans again repeat their arguments that the Crucible severance benefits were abolished before ERISA came into existence. These contentions, however, simply reiterate the points unsuccessfully advanced in Henglein I, Henglein II, and Henglein III.

21

The Plans' position has been effectively undermined by the comprehensive findings of fact by the District Court which are supported by the record. They establish that Crucible established a benefits plan in 1968 which it published and distributed to its employees. In the following year that Plan was amended, but that fact was deliberately not made known to the employees. Similarly, in 1972, the Board of Directors purported to abolish the Informal Plan but concealed that action from the employees.

Despite these surreptitious attempts to revise and revoke the benefits plans, company executives continued their oral representations that benefits were available for the employees. Indeed, in recruiting union workers to accept salaried positions, superintendents consistently promised that benefits would equal or exceed those established by collective bargaining agreements.

In its publication of Formal Plans in 1972 and 1976, the Company did not state that those booklets described all of the benefits available. To the contrary, company executives in the years following told the employees that shutdown benefits not mentioned in those publications were available. We find no error in the District Court's conclusion that a shutdown benefit plan was in effect in 1982.

VIII.

The case will be remanded so that the District Court may award benefits due for those employees who qualify under the six year statute of limitations. The District Court's order of August 23, 2000 establishing benefits for Fahnert will be modified and the Retirement Board's calculation of $53,183 plus interest will be reinstated. The Court will also determine whether any of the employees who joined the litigation at a later stage are entitled to recover, and if so refer the claims to the plan administrator for appropriate computations. In all other respects, the judgment of the District Court will be affirmed.

22

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

23