**COVANTA ENERGY GROUP, INC. f/k/a Ogden Energy Group, Appellant,**

v.

**Ashish D. SARKAR.**

No. 02–2520.

United States Court of Appeals, Third Circuit.

Argued on June 3, 2003.

Decided Oct. 31, 2003.

Nancy Winkleman, (Argued), David Smith, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Appellant.

Daniel A. Pollack, (Argued), Martin I. Kaminsky, W. Hans Kobelt, Pollack & Kaminsky, New York, NY, Kevin H. Marino, Newark, NJ, for Appellee.

Before: ALITO, ROTH and STAPLETON, Circuit Judges.

### OPINION

ROTH, Circuit Judge.

Covanta Energy Group, Inc., brought suit in the U.S. District Court for the District of New Jersey against Ashish D. Sarkar, seeking a declaratory judgment that Sarkar did not have "Good Reason" to terminate his employment agreement. Sarkar counterclaimed for breach of contract, claiming that either he was terminat-

ed from his position without cause or that he had "Good Reason" to resign, and thus was entitled to benefits. The parties consented to a trial before the United States Magistrate Judge, who held a one-day bench trial. The Magistrate judge rejected Sarkar's argument that he was terminated without cause but found that his resignation was for "Good Reason." Accordingly, the District Court entered judgment in favor of Sarkar in the amount of $2,675,000, plus pre-judgment interest.

The District Court had jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. In reviewing a case following a non-jury trial, we exercise plenary review of the district court's legal conclusions; we review its findings of fact under a clearly erroneous standard. *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 208 (3d Cir.2001), *cert. denied*, 535 U.S. 955, 122 S.Ct. 1358, 152 L.Ed.2d 354 (2002).

Until early 2001, Sarkar was an Executive Vice President of Covanta Energy Group, Inc., and President of its subsidiary, Covanta Asia Pacific. Covanta is part of a conglomerate which developes and manages power projects world-wide. Due to his expertise in development, Sarkar was hired to supervise Covanta's independent power projects in Asia. In this capacity, Sarkar was responsible for managing existing assets and developing new projects.

In 1991, Sarkar signed a five-year employment agreement with Covanta. The agreement contained the following termination provision:

5. Termination of Employment

Executive's employment under this agreement may be terminated under the following circumstances:

e) Termination by Executive. Executive may terminate his employment under this agreement at any time after providing Notice of Termination to the Company. Such Notice shall state whether the Executive's termination is for "Good Reason." Termination of employment by Executive for Good Reason shall be deemed to have occurred, if Executive provides the Notice for Termination within 60 days ... after the occurrence of any of the following:

(i) A change in Executive's responsibilities, status, title, or position, which, *in Executive's reasonable judgment*, represents a diminution of the Executive's responsibilities, status, title, or position.

(emphasis added).

In September 1999, Scott Mackin became Covanta's Chairman and CEO. Mackin attempted to alter the nature and operations of the corporation in an attempt to rescue Covanta from bankruptcy. In anticipation of restructuring, Covanta employed the services of A.T. Kearney, a consulting firm, to review all of its operations. A.T. Kearney submitted a draft report in the fall of 2000, which included a recommendation to restructure the Asian operations.

In December 2000, Mackin and Sarkar had a series of discussions about the future of Covanta and how restructuring might be accomplished. Mackin told Sarkar that Covanta wanted to close the Hong Kong office, stop all development operations in Asia, and focus on managing existing assets rather than developing new ones. Sarkar was given the choice of running the Asian operations from Covanta's office in New Jersey or at a less-expensive location in Asia. Sarkar declined both options and announced his intention to resign.

Later, Sarkar had another series of conversations with Mackin regarding Sarkar's severance package. Sarkar requested that Covanta pay the $3 million in benefits that

he was due, pursuant to his employment agreement. When he did not receive a severance package, Sarkar sent Covanta a notice of termination for "Good Reason," resigning from his position.

Based on our review of the record, we conclude that the District Court was not clearly erroneous when it made the factual determination that Sarkar's resignation was for "Good Reason" because it was reasonable for Sarkar to conclude that there was a significant diminution in his responsibilities. Having made this factual finding, the legal conclusion that Sarkar properly terminated his contract followed as a matter of course. Moreover, we do not agree with Covanta's position that the Magistrate Judge employed an improper "subjective" standard in determining whether Sarkar's resignation was for "Good Reason." The language of the agreement clearly provided that it is the Employee," *i.e.*, Sarkar, who would use his "reasonable judgment" in determining whether his responsibilities had been diminished. The conclusion by the Magistrate Judge that Sarkar had so reasoned is amply supported by the record before us.

For the foregoing reasons, we will affirm the judgment of the District Court.