OPINION OF THE COURT
FISHER, Circuit Judge.
JFK BLVD Acquisition Partners, L.P. (“JFK BLVD”) appeals from the District Court’s judgment granting in part a motion for summary judgment in favor of Defendant/Cross Plaintiff Eli Weinstein (“Weinstein”). The District Court granted Weinstein’s request for a declaratory judgment finding that he is not in default on a Nominee Agreement with JFK BLVD for the purchase of land. We will affirm.
I.
We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.
On May 12, 2006, JFK BLVD entered into an agreement to purchase JFK Parcels, 8.2 acres of land located at 2001 JFK Boulevard, 2101 JFK Boulevard, 2201 JFK Boulevard, 2301 JFK Boulevard and 60 North 23rd Street in Philadelphia, Pennsylvania from R & F Penn Center Associates, L.P. (“R & F Penn”). In December 2006, JFK BLVD entered into a Nominee Agreement with Weinstein. This agreement would effect the resale of JFK Parcels from JFK BLVD to Weinstein. Under the Nominee Agreement, Weinstein would pay a total of $70 million plus all transaction costs and interest related to the JFK Parcels and their acquisition by JFK BLVD. Weinstein was to initially pay a $12 million non-refundable deposit, plus closing costs. After closing, JFK BLVD was to retain the legal title to JFK Parcels until Weinstein either paid the remainder of the $70 million to become the legal owner or he defaulted, as defined in the Nominee Agreement.
On either December 19 or December 20, 2006, JFK BLVD and R & F Penn held a closing on JFK Parcels (Weinstein’s cross-claim and JFK BLVD’s Brief disagree on the date of closing, but the precise date is not relevant to any of the legal issues *635 before the court). Weinstein paid the $12 million deposit on the date of closing, but did not pay the closing costs as required by the Nominee Agreement. JFK BLVD used the $12 million paid by Weinstein to fund the purchase of JFK Parcels from R & F Penn. Weinstein admitted in his deposition that he was required to pay $2.8 million in closing costs for the transaction between JFK BLVD and R & F Penn, but did not do so. Three months after the closing, Weinstein paid JFK BLVD $1.5 million of the $2.8 million owed for the closing costs. While Weinstein had made clear his desire to complete the purchase of JFK Parcels, he had not honored post-closing financial obligations under the Nominee Agreement by failing to pay for maintenance and insurance of JFK Parcels, failing to pay interest expenses, and failing to pay the costs of litigation.
In a letter dated June 20, 2007, JFK BLVD declared Weinstein in default of the Nominee Agreement, citing the failure to provide the necessary closing payments, failure to pay interest on the acquisition financing, and failure to resolve this litigation.
Plaintiff Berish Berger brought claims against multiple defendants in a suit filed in the United States District Court for the Eastern District of Pennsylvania. Weinstein was one of these defendants. Weinstein then filed cross-claims against other defendants, including JFK BLVD. Weinstein sought a declaratory judgment from the District Court that he was not in default under the Nominee Agreement and that he remained entitled to purchase JFK Parcels pursuant to the Nominee Agreement. Weinstein moved for summary judgment and JFK BLVD moved to strike the motion for summary judgment. In an August 26, 2008, 2008 WL 3984164, order, the District Court granted Weinstein’s motion for summary judgment in part, finding that Weinstein was not in default of the Nominee Agreement but refused to find that he retained the right to purchase JFK Parcels. JFK BLVD filed a timely notice of appeal.
II.
The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing a district court’s order granting a motion for summary judgment we exercise plenary review, applying the same standard utilized by the District Court to determine whether the moving party has demonstrated that there is no genuine issue of material fact. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1020 (3d Cir.1991).
Summary judgment is appropriate only when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir.2007) (quoting Fed.R.Civ.P. 56(c)) (internal quotations omitted). When interpreting the language of a contract, summary judgment must only be granted when there is only one reasonable interpretation. Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164 (3d Cir.2001) (quotations omitted).
District courts have the power to “declare the rights and other legal relations of any interested party seeking such declaration.” 28 U.S.C. § 2201(a). We have held that whether declaratory relief should be granted is within the sound discretion of the District Court. Nat'l R.R. Passenger Corp. v. PA. Public Utility Comm’n, 342 F.3d 242, 258 (3d Cir.2003).
*636 III.
A.
JFK BLVD first argues that Weinstein’s failure to pay the $2.8 million in closing costs constituted a default of the Nominee Agreement. Weinstein admits that he was obligated to pay the closing costs for the transaction between JFK BLVD and R & F Penn and that he failed to do so. According to JFK BLVD, this failure to supply funds constitutes a default under the Nominee Agreement.
The Nominee Agreement under the heading “Owner’s Default” states:
If (i) all conditions precedent to Nominee’s [JFK BLVD] obligation to perform pursuant to the Contract have been satisfied, and if Closing pursuant to this Nomination does not take place due to any failure of Owner to perform pursuant to this Nomination or Owner’s failure to supply sufficient funds on the date of Closing to complete the purchase of the Property; or (ii) Owner does not make the Nomination Termination Payment, Nominee shall retain such sums paid by Owner pursuant to Section 2 hereof and Nominee principals or such other person or entity as they designate shall become the absolute legal and equitable owner of the Nominee and its general partner as liquidated damages and this Nomination shall thereupon terminate.
Nominee Agreement at ¶ 5(a). The most legally significant disagreement between the parties is which closing is meant by the phrase “Closing pursuant to this Nomination.” JFK BLVD argues closing pursuant to this nomination refers to the closing between JFK BLVD and Weinstein. Under this argument, Weinstein has defaulted because the closing between JFK BLVD and Weinstein did not take place due to Weinstein’s failure to supply funds to complete the purchase of the property. Weinstein argues, and the District Court agreed, that the term “closing” refers to the closing between JFK BLVD and R & F Penn. Because closing between JFK BLVD and R & F Penn took place in December 2006, Weinstein did not default.
We agree with the District Court that the term “closing” in paragraph 5(a) refers to the closing between JFK BLVD and R & F Penn. The term “closing” is defined in the Nominee Agreement as “Closing required by the Contract.” (Nominee Agreement at § 2A) The term “contract” is defined in the Nominee Agreement’s preamble as the agreement between R & F Penn and JFK BLVD. Additionally, as the District Court noted, at least six times in the Nominee Agreement the term “closing” refers to the closing between JFK BLVD and R & F Penn. It would be odd for the parties to consistently use that term to refer to the R & F Penn transaction and then suddenly use it to refer to the transaction between themselves. Finally, it is beyond question that later in the Default Clause the term “closing” refers to the R & F Penn/JFK BLVD transaction when it requires Weinstein to supply sufficient funds by the date of the closing to allow for the purchase of JFK Parcels. To adopt JFK BLVD’s interpretation, we would have to find that the same word referred to different transactions within the same sentence. We agree with Weinstein that this language firmly establishes that the Default Clause refers to a failure to close between R & F Penn and JFK BLVD.
JFK BLVD argues this interpretation means that whether Weinstein was in default would be determined not by anything that he did or did not do, but by the actions of a third party. This argument ignores the fact that Weinstein’s own actions would play a significant role in *637 whether or not he defaulted under the agreement. If Weinstein supplied sufficient funds for the closing between JFK BLVD and R & F Penn to take place, then he could not default, regardless of whether the closing actually took place. Only if he chose not to provide the required funds, as he did in the instant case, would a third party control Weinstein’s default status, i.e., by JFK BLVD choosing not to close the R & F Penn transaction.
The Nominee Agreement provides that Weinstein is in default when two elements are satisfied: (1) the closing between JFK BLVD and R & F Penn does not take place; and (2) Weinstein did not supply sufficient funds to allow the closing between JFK BLVD and R & F Penn to take place.[1] Both elements must be present for Weinstein to be in default and only one, the latter, occurred in the instant ease.
Contrary to JFK BLVD’s argument, this interpretation does not allow Weinstein to breach the Nominee Agreement with impunity. If Weinstein failed to supply the funds necessary for the closing between JFK BLVD and R & F Penn, JFK BLVD had two options. First, they could refuse to go through with them closing with R & F Penn, holding Weinstein in default. Second, JFK BLVD could, as they did, go through with their closing with R & F Penn, seek payment after-wards from Weinstein, and if Weinstein refused payment, sue for breach of contract damages.
Under the specific terms of the default portion of the Nominee Agreement, however, JFK BLVD was only entitled to find Weinstein in default if the closing between it and R & F Penn did not take place because of Weinstein’s failure to provide the required funds. Because the closing between R & F Penn and JFK BLVD actually took place, Weinstein did not default by failing to pay the required closing costs.
B.
JFK BLVD next argues that the District Court’s interpretation of the Default Clause would render the liquidated damages portion of paragraph 5(a) illogical. The parties dispute whether the liquidated damages clause in paragraph 5(a) permits JFK BLVD to retain ownership of JFK Parcels in the event of a default by Weinstein. JFK BLVD argues it has the right to both the $12 million and legal title to JFK Parcels. Weinstein asserts this argument is incorrect.
JFK BLVD argues that under the District Court’s interpretation of the Default Clause, it could never have both legal title to JFK Parcels and keep Weinstein’s $12 million deposit because it would have to forego closing with R & F Penn in order to hold Weinstein in default. JFK BLVD argues that this demonstrates that the closing mentioned in the Default Clause is between JFK BLVD and Weinstein. Weinstein points out that under JFK BLVD’s interpretation the exact same result could occur if Weinstein did not supply adequate cash for JFK BLVD to close with R & F Penn and JFK BLVD did not have adequate cash to close the deal on its own. Instead, Weinstein argues that JFK BLVD misreads the liquidated damages clause and argues alternatively that JFK BLVD is either not entitled to keep JFK Parcels under the liquidated damages clause or is entitled to keep it only if Weinstein’s default falls under the second prong of the Default Clause, which holds Weinstein in default if he fails to make the *638 Nomination Termination Payment which could be due well after JFK BLVD had acquired JFK Parcels.
The District Court’s interpretation of the Default Clause does not render the liquidated damages clause illogical. Under the District Court’s interpretation, JFK BLVD could still keep both the $12 million deposit and legal title to JFK Parcels if Weinstein’s default was for failure to make the Nomination Termination Payment. The fact that under one category of default JFK BLVD could not obtain both JFK Parcels and the $12 million deposit is not enough to overcome the significant evidence that the term “closing” in the Default Clause refers to the closing between R & F Penn and JFK BLVD.
C.
As the District Court recognized, a default is not the same as a breach of contract. The Default Clause in the agreement was a specifically bargained for provision that in certain conditions would allow JFK BLVD to receive liquidated damages. There are only two conditions which allow JFK BLVD to declare Weinstein in default: (1) where JFK BLVD does not close on its transaction with R & F Penn because of a failure of Weinstein to perform; or (2) where Weinstein fails to make the Termination Payment when due under the Nominee Agreement. JFK BLVD argues several breaches of the Nominee Agreement demonstrate Weinstein defaulted under the agreement. Among these breaches are Weinstein’s failure to pay all costs related to the maintenance and insurance of JFK Parcels, Weinstein’s failure to pay 12 percent interest on the unpaid portion of the $70 million purchase price, and Weinstein’s failure to indemnify JFK BLVD and its principals for all costs of this litigation. Weinstein admits that the last time he paid any maintenance or insurance expense was in “mid to late '07.”
Under no interpretation of the Nominee Agreement could Weinstein be found in default for anything other than the two items specified in the agreement.
JFK BLVD’s allegations that Weinstein failed to abide by the Nominee Agreement may establish a breach of contract claim. Because none of the alleged conduct constitutes a default, as that term is defined by the Nominee Agreement, the conduct cannot establish that Weinstein is in default.
JFK BLVD cite in its brief a treatise which declares that not all instances of default need to be listed in an agreement when “time is of the essence,” and that the buyer’s failure to close on a date certain is an automatic default allowing the owner to retain title to the property. (JFK BLVD Bl. Br. at 31) (citing 91 Am.Jur. Trials 333 (2008).) JFK BLVD, however, is seeking to do more than retain title to the JFK Parcels.[2] JFK BLVD is instead seeking to retain both the $12 million deposit paid by Weinstein and ownership of JFK Parcels, as provided for in the liquidated damage provision found in the Nominee Agreement. Those liquidated damages, however, can only come into play under the conditions specified in the Default provision of the Nominee Agreement. In other words, Weinstein’s failure to abide by the terms of the Nominee Agreement may constitute a breach of contract such that JFK BLVD may be entitled to breach of contract damages. The conduct does not establish a default that would entitle JFK *639 BLVD to liquidated damages under the Nominee Agreement.
Finally, JFK BLVD states in its brief that the District Court “as much as admitted that Weinstein may be in default” when the Court declined to declare that Weinstein had the right to complete his performance. What the District Court said, however, is that it was refusing to exercise its discretion to grant Weinstein pai't of the declaratory relief he sought. See Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 210-11 (3d Cir.2001) (allowing district courts the discretion to decide some issues raised in a declaratory judgment action while refusing to rule on others). The District Court cited Weinstein’s admitted failure to carry out certain obligations under the Nominee Agreement, but it never came close to stating that Weinstein defaulted. To the contrary, the Court made clear that Weinstein did not default, as the term is defined in the Nominee Agreement. The District Court simply chose to exercise its discretion to grant Weinstein declaratory judgment despite the fact that Weinstein may have breached the contract.
We agree that Weinstein is not in default under the Nominee Agreement for failing to perform his post-closing obligations.
IV.
Because under the only reasonable reading of the Nominee Agreement the facts clearly indicate the Weinstein did not default under the Agreement summary judgment was appropriate in this case. Accordingly, we will affirm the judgment of the District Court.

. Weinstein can also be in default under the Nominee Agreement if he does not make the Nomination Termination Payment. This issue is discussed infra at § 11(B).

. JFK BLVD may in fact retain legal title to JFK Parcels, as the District Court did not exercise its discretion to declare that Weinstein has a right to complete performance of the Nominee Agreement and assume legal title to the land.