

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2002

# Welch Foods Inc v. North East

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3456

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Welch Foods Inc v. North East" (2002). *2002 Decisions.* Paper 570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 01-3456


WELCH FOODS, INC., A COOPERATIVE

v.

BOROUGH OF NORTH EAST
(Erie PA D.C. Civil No. 98-cv-00246E)

WELCH FOODS, INC., A COOPERATIVE

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION
(Erie PA D.C. Civil No. 99-cv-00165E)

Welch Foods, Inc.,
Appellant


On Appeal From The United States District Court
For the Western District of Pennsylvania
(D.C. Civil Nos. 98-cv-00246 and 99-cv-00165E)
District Judge:  Honorable Sean J. McLaughlin


Argued May 3, 2002

BEFORE: ROTH and STAPLETON, Circuit Judges, and POLLAK,* District Judge

(Opinion filed:   September 13, 2002)

_____
*Honorable Louis H. Pollak, United States District Judge for the Eastern District of
 Pennsylvania, sitting by designation.

                         Paul F. Burroughs (Argued)
                         Quinn, Buseck, Leemhuis, Toohey & Kroto
                         2222 West Grandview Boulevard
                         Erie, PA 16506
                          Attorney for Appellant

                         Russell S. Warner
                         Mark J. Shaw (Argued)
                         MacDonald, Illig, Jones & Britton
                         100 State Street - Suite 700
                         Erie, PA 16507
                          Attorneys for Appellee Borough of North East

                         John T. Stahr (Argued)
                         United States Department of Justice
                         Environment & Natural Resources Division
                         P.O. Box 23795
                         L'Enfant Plaza Station

Washington, D.C.  20026
 and
Joyce A. Howell
United States Environmental Protection Agency
1650 Arch Street
Philadelphia, PA 19103
 Attorneys for Appellee United States Environmental
 Protection Agency

_____

OPINION OF THE COURT

STAPLETON, Circuit Judge:

I.

Welch Foods, Inc. ("Welch") manufactures fruit-based products at a production plant in the Borough of North East, Pennsylvania ("the Borough").  Through this manufacturing process, Welch produces industrial wastewater, which it discharges into the Borough's Publicly Owned Treatment Works ("POTW").  The POTW in turn discharges the treated effluent into Sixteen Mile Creek, a tributary of Lake Erie.

The Borough's POTW consists of two separately located treatment plants which receive both sewage and industrial waste.  The POTW holds a National Pollutant Discharge Elimination System ("NPDES") permit to discharge treated sewage effluent into Sixteen Mile Creek.

One of the POTW's major sources of influent is from fruit processing plants located in the Borough, primarily those of Welch.  The "volume and strength of the fruit processing plants' discharge into the POTW varies over the course of the year, such as during harvest season."  App. at 1150.  This discharge creates a large amount of solid waste and sludge due to the high volume of dissolved organic matter in the wastewater.

The POTW has had a history of problems.  In 1995, the Borough was notified by one of its land-application site owners that it would no longer take solid or liquid sludge, and as a result, sludge began to build up at the Borough's treatment facilities.  To alleviate this problem, the Borough hired a contractor to help de-water the sludge.  In September of 1995,  the Borough's Discharge Monitoring Report revealed multiple violations of its NPDES permit, including violations of dissolved oxygen, total suspended solids, carbonaceous biochemical oxygen demand, and fecal coliform.

In March of 1996, the Pennsylvania Department of Environmental Protection ("PADEP") inspected one of the treatment plants in response to complaints about malodor.  The PADEP found that stockpiled sludge had entered into a storm-water basin that discharged into Sixteen Mile Creek.  PADEP then conducted further inspection of the other treatment plant and found similar violations related to stockpiled sludge.  Further, the Borough was cited for a break in one of the treatment plants which allowed untreated waste to enter Sixteen Mile Creek.

In May of 1996, the PADEP instituted an action in equity against the Borough for its violations.  Throughout 1996, the Borough undertook a number of corrective measures aimed at eliminating these violations and improving the operation and maintenance of the treatment plants.  On September 6, 1996, the PADEP and the Borough entered into an agreement by which the Borough would continue to maintain its treatment plants and reduce the build up of solid wastes.  Despite undertaking a number of tasks aimed at improving and maintaining of the operation of the POTW, the Borough could not maintain compliance with its NPDES permit throughout 1997.

To determine the cause of the Borough's noncompliance, the Erie County Department of Health and the PADEP conducted an investigation of the POTW, which focused on the quantity and quality of the influent entering the treatment plants.  That investigation revealed that the treatment plants were "routinely organically overloaded and occasionally hydraulically overloaded."  App. at 1172.

On June 11, 1997, the PADEP held a meeting with the Erie County Department of Health, the EPA, the Borough, Welch, and another industrial user of the POTW. At that time, the EPA and the PADEP informed the Borough that it would be required to undertake a federally-approved pretreatment plan. By letter dated June 26, 1997, the Borough was formally advised that it must undertake a pretreatment program.

On June 22, 1998, the Borough enacted the North East Pretreatment Ordinance, Ordinance No. 785. The Ordinance incorporates federal and state pretreatment standards for discharges of industrial wastes into POTWs.

On August 20, 1998, the PADEP issued a revised NPDES permit, which added a condition that the Borough shall "develop, operate, and implement an industrial pretreatment program." App. at 1283. On that same day, the PADEP and the Borough entered into a consent decree which was lodged in the Commonwealth Court. The court approved the consent decree by order dated September 8, 1998.

On October 20, 1998, the EPA issued for public comment a notice of intention to approve the Borough's pretreatment program. EPA received no comments on the proposed action. By letter dated December 1, 1998, EPA advised the Borough that it had approved the pretreatment program.

Welch filed two lawsuits in an attempt to stop the Borough and the EPA from implementing the Borough's plan. In the first case, brought in the Court of Common Pleas of Erie County, Welch claimed that the pretreatment program mandated by the EPA and the Pretreatment Ordinance enacted by the Borough violated Welch's federal and state constitutional rights. Welch amended the complaint in this state suit to add a count against the EPA and a count against the PADEP. In Count II, Welch alleged that the EPA erred in requiring the Borough to develop and implement a pretreatment program, and in approving the Borough's pretreatment program. In Count III, Welch claimed that the PADEP erred in also requiring the Borough to develop and implement a pretreatment program. The Borough removed this case to federal court pursuant to 28 U.S.C. 1441(c).

Welch originally filed the second case in this Court as a Petition to Review under the Administrative Procedure Act ("APA"). In this petition, Welch sought review of the EPA's decisions requiring and approving the Borough's pretreatment program. The claim in this case mirrored Count II against the EPA in the first case. We transferred the petition to the Western District of Pennsylvania, where the District Court subsequently consolidated the two cases.

The District Court granted PADEP's motion to dismiss on the grounds of sovereign immunity. Welch thereafter sought leave to file a Revised Second Amended Complaint in order to add claims against the Borough and EPA arising out of the POTW rate structure the Borough has employed since at least 1978. The District Court denied this motion as futile. The District Court subsequently affirmed the EPA's final determination approving the need for and content of the Borough's pretreatment program. This decision resolved Count II of the first case as well as the virtually identical APA Petition to Review claim in the second.

The Borough filed a motion for summary judgment on the remaining count of the consolidated cases, the constitutional claims. After the District Court granted the Borough's motion and closed the case, Welch timely appealed these decisions.

II.

In its motion to file a Revised Second Amended Complaint, Welch sought to add claims against the Borough and EPA regarding the formula the Borough has employed to calculate users' POTW charges since 1978. Plaintiff initially claimed that the formula used by the Borough to calculate the charges violated the Clean Water Act ("CWA"), 33 U.S.C. 1251 et seq., because the formula failed to proportionately allocate operation and maintenance costs according to the users' total contributions of wastewater. At a hearing on the motion, the District Court allowed Welch to add breach of contract claims based on 1972 and 1975 contracts between Welch and the Borough to the proposed Revised Second Amended Complaint. According to Welch, the Borough violated the terms of these agreements by enacting Ordinance 643, thereby changing the formula upon which the Borough based charges for use of the POTW.

The District Court denied Welch's motion to amend holding that the CWA claims were substantively futile and that the contract claims were futile because Welch was barred by the statute of limitations. On appeal, Welch challenges only the District

Court's ruling with respect to the contract claims.

In 1972, Welch and the Borough entered into a contract which established a sewer use rate formula by which the Borough would charge Welch for the disposal of industrial waste. On January 25, 1975, Welch and the Borough amended this agreement so that, rather than paying based solely on the amount of waste Welch produced, Welch would pay a pro rata share of the total waste processed by the POTW.

According to the proposed Second Amended Complaint, the Borough initially breached this contract on May 11, 1978, when it enacted Ordinance 643. According to Welch, under Ordinance 643, the Borough charged Welch substantially greater fees than it would have under the 1975 agreement. Welch further alleged that since May 11, 1978, the Borough has breached the contract each and every time it billed Welch according to the rate structure set forth in the Ordinance.

Welch claims that the statute of limitations has not run because the 1975 agreement is a continuing contract, and each successive failure by the Borough to properly bill Welch creates a new cause of action. The District Court rejected this claim.

A continuing contract is one which requires, "continuing (or continuous) performance for some specified period of time, a period that may be definite or indefinite when the contract is made." Arthur Linton Corbin, Corbin on Contracts 956 (1951). Even if we assume that the 1975 agreement was a continuing contract, however, Welch's claim is nevertheless barred by the statute of limitations. In analyzing when the statute of limitations begins to run on a continuing contract, we must focus on the type of breach. "[W]here there was an outright repudiation [of the contract], . . . the statute of limitations [begins] to run at that point." Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 214 (3d Cir. 2001).

Ordinance 643 mandates that all industries shall pay an industrial waste fee according to a particular formula. This formula changed the formula established in both the 1972 Agreement and the subsequent 1975 amendment, and it was clear from the face of this ordinance and the Borough's subsequent billing of Welch that the Borough no longer recognized the 1972/1975 agreements as governing the relationship between the parties. Accordingly, any cause of action arising out of this repudiation accrued on the date of passage of this Ordinance. The District Court thus properly found that the proposed amendment would be futile because the claim would be barred by the statute of limitations.

### III.

Welch argues that the EPA's decision to require the Borough to implement a pretreatment program for industrial wastewater was arbitrary and capricious. Welch contends that the EPA did not apply the proper standard in determining the need for pretreatment because there was no finding that "the nature of Welch's waste or any other industrial waste, poses a threat of Pass Through or Interference which would justify a pretreatment program." Appellant's Br. at 42-43. Welch further argues that the POTW's record of NPDES violations resulted from operation and maintenance problems with respect to sludge, and that industrial wastewater played no role in those violations. The District Court properly rejected both of these arguments.

In reviewing the substance of informal agency action, we are to hold unlawful and set aside "actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. . . . In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

Motor Vehicle Mfrs Assn. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citations omitted).

As a general matter, POTWs like the Borough's that have design flows less than five million gallons per day are not required to implement pretreatment programs; however, they may be required to do so if the EPA determines that a program is

warranted in order to prevent "pass through" or "interference."  The regulations provide:

> The Regional Administrator or Director may require that a POTW with a design flow of 5 mgd or less develop a POTW Pretreatment Program if he or she finds that the nature or volume of the industrial influent, treatment process upsets, violations of POTW effluent limitations, contamination of municipal sludge, or other circumstances warrant in order to prevent Interference with the POTW or Pass Through.

403 C.F.R. part 403.8(a).

"Pass Through" means "a Discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation)."  40 C.F.R. part 403.3(n).

"Interference" is defined as "Discharge which, alone or in conjunction with a discharge or discharges from other sources . . . (1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal; and (2) Therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation). . . ."  40 C.F.R. part 403.3(i).

As the Environmental Appeals Board ("EAB") has observed, the plain language of the regulations can be broken into two distinct inquiries.  First, the EPA needs to determine "whether any of the 'circumstances' . . . present a real possibility of interference or pass through."  City of Yankton, 5 E.A.D. 376, 1994 WL 372201, Docket No. NPDES-SD---23396 (EPA July 1, 1994).  If one or more circumstances suggest "the possibility of interference or pass through" then the inquiry must turn to "whether there is some nexus between the pretreatment program and the possibility of interference or pass through."  Id.  The EPA need not find that the pass through or interference is caused solely by the industrial wastewater that will be pretreated, but rather only that there are circumstances creating a potential for pass through or interference and that pretreatment of the influent will help alleviate the problem.  We agree with that analysis and hold that the District Court applied that standard in reviewing the EPA's decision.

Welch's second argument is equally without merit.  While it is true that the administrative record is replete with evidence of problems at the Borough's treatment plants, the record also indicates that under the supervision of PADEP, the Borough took careful steps to correct those problems.  These steps, however, did not eliminate the pass through and interference experienced at the POTW.  Although there was a period of time in which the POTW maintained compliance after taking the remedial steps, as the District Court found, the study conducted in the Fall of 1997 indicates that the improvements were not the reason for the compliance.  Rather, the period of compliance was due in part to lower influent flows, lower rainfall, lower total flow from Welch and lower organic loading from Welch.  Further, the study concluded that Welch's contribution of wastewater is highly relevant to the ability of the POTW to maintain NPDES compliance.  As noted above, the EPA may base its decision on the potential for pass through or interference.  Here there is sufficient evidence to show that the potential existed.  Further, there must be reason to believe that the pretreatment plan will help alleviate the identified problem.  The Erie County Department of Health report listed fruit processors (of which Welch is the primary one) and other industrial users as a major factor in the POTW maintaining compliance.

We conclude that the EPA's decision was not arbitrary or capricious.

### IV.

In the remaining count of its complaint, Count I, Welch alleges in four subparts that the Borough abused its authority under Pennsylvania's statutory law and violated Welch's state and federal constitutional rights by enacting the pretreatment ordinance. We have considered each of these arguments (including its substantive due process, equal protection, procedural due process, and taking claims) and, essentially for the reasons given by the District Court in its careful opinions, conclude that summary judgment for the Borough was appropriate.

### V.

The judgment of the District Court will be affirmed.

TO THE CLERK:

Please file the foregoing Not Precedential Opinion.


                              /s/ Walter K. Stapleton
                                        Circuit Judg